## ANHEUSER-BUSCH BREWING ASS'N v. CLAYTON.

(Circuit Court of Appeals, Fifth Circuit. May 22, 1893.)

### No. 71.

**1. Banks and Banking—Collections—Insolvency.**

A bank holding a draft for "collection and returns," which accepts a check of the drawee, one of its depositors, and, without separating the amount from the general mass of its moneys, charges the same to the drawee, and credits the drawer on its books, holds the money as agent for the drawer, and not as trustee; and after the bank becomes insolvent the drawer is a mere general creditor, and not entitled to priority of payment out of the bank's assets.

**2. Same.**

Nor is the drawer entitled to priority under Const. Ala. art. 14, § 17, providing that "depositors who have not stipulated for interest shall for such deposits be entitled, in case of insolvency, to preference of payment over all other creditors."

Appeal from the Circuit Court of the United States for the Middle District of Alabama.

In Equity. Bill by the Central Railroad & Banking Company against the John McNab Bank and John W. Tullis for a receiver of the bank. The Anheuser-Busch Brewing Association intervened, and claimed the amount of a draft collected by the bank on intervener's account, and asked that the same be paid to it by Henry D. Clayton, receiver of the bank. The matter was referred to a master, who reported that the intervener was a general creditor. From a decree confirming the master's report the intervener appeals. Affirmed.

W. C. Swanson, for appellant.

A. H. Merrill, (Roquemore & White, of counsel,) for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and TOULMIN, District Judge.

TOULMIN, District Judge. The appellant, a corporation, having its chief place of business in the city of St. Louis, Mo., on the 20th of March, 1891, drew its draft for the sum of $793.80, with exchange, on one P. H. Morris, who resided at Eufaula, Ala., and sent the draft to the McNab Bank for "collection and returns." On the 26th of March, 1891, Morris paid the draft with his check on the McNab Bank. He had at that time about $3,000 to his credit as a depositor in said bank, and there was as much as $10,000 in cash in the vaults of the bank belonging to it. On the same day—the 26th of March, 1891—the McNab Bank forwarded to appellant its exchange drawn on the Hanover National Bank

of New York, which, being sent forward by appellant for collection in New York, was protested for nonpayment, the McNab Bank having failed and made an assignment between the time it forwarded the draft to St. Louis and the date of its presentation in New York. It appears that the McNab Bank was insolvent at the time of this transaction, but was engaged in business as a "going concern" down to the 30th of March, 1891. While the McNab Bank was largely indebted to the Hanover National Bank of New York, it had a line of credit with it, and all drafts drawn on said bank by the McNab Bank were duly paid down to and including the date of the latter's suspension. On the 30th of March, 1891, the McNab Bank made an assignment for the benefit of its creditors of all its property and assets. A short time thereafter, on a bill filed by a large creditor, the assignee was removed from the control and possession of the bank's estate, and the appellee was appointed receiver in his stead, to take charge of and administer the same. The assignee delivered to the receiver all the property and assets transferred to him by the bank. Among the assets so delivered was a sum in cash of $9,200.

Appellant's contention is that in the collection of its draft on Morris the McNab Bank acted as its agent and trustee, and that it is entitled, as against other creditors of the bank, to priority of payment out of the bank's assets; that, notwithstanding the money collected from Morris was intermingled with the general assets of the bank, or was in a common mass with moneys of the bank, and cannot be identified or specifically traced into the hands of the receiver, yet a court of equity will subtract the amount due appellant from the funds in the hands of the receiver, and will compel him to restore it to appellant, because the amount had been collected by the bank as its agent and trustee, and had increased pro tanto its general assets. And appellant further contends that, if not entitled to this relief, it at least has a right to be classed among depositors who had not stipulated for interest on deposits, these being a class preferred for payment out of the general assets of the bank under the constitution of the state of Alabama. Article 14, § 17.

The relation between appellant and the McNab Bank as to the draft on Morris sent by the former to the latter for collection was that of principal and agent; but, in order to enforce a trust in favor of appellant as to any money collected on said draft, it must be specifically traceable into the hands of the receiver. Commercial Nat. Bank v. Armstrong, 39 Fed. Rep. 684; same case in supreme court of the United States, (Oct. term, 1892; not yet officially reported,) 13 Sup. Ct. Rep. 533. Accepting Morris' check in payment of his debt to appellant, and charging the amount of it on Morris' account by the bank, was but a shifting of its liability, whereby it became appellant's debtor, and assumed the obligation to pay to it the amount of the check less exchange. There is nothing to indicate that this amount was separated and kept unmingled with the bank's own money; but, on the contrary, it is conceded

that it is undistinguishable from the mass of the bank's own money, and cannot be traced to and identified in the hands of the receiver. This being so, appellant has no better equity than the other creditors of the bank, and is entitled to no priority over them. It can only come in as a general creditor, unless it was a depositor in contemplation of article 14, § 17, of the constitution of the state of Alabama, which provides that "depositors who have not stipulated for interest shall for such deposits be entitled, in case of insolvency, to preference of payment over all other creditors." Such are the decisions in Alabama, where the transaction occurred, and the text-books and the decisions in the federal courts are in accord with the Alabama decisions. Maury v. Mason, 8 Port. (Ala.) 212; Goldsmith v. Stetson, 30 Ala. 164; Parker v. Jones, 67 Ala. 236; 2 Story, Eq. Jur. 1259; Bolles, Banks, § 474; 2 Morse, Banks, § 590; Wait, Insolv. Corp. § 659; Illinois Trust & Savings Bank v. First Nat. Bank, 15 Fed. Rep. 858; Bank v. Dowd, 38 Fed. Rep. 172; Bank v. Russell, 2 Dill. 215; Commercial Nat. Bank v. Armstrong, supra; First Nat. Bank v. Armstrong, 42 Fed. Rep. 193; Commercial Nat. Bank v. Armstrong, (Oct. term, 1892; opinion rendered March 6, 1893; not yet officially reported,) 13 Sup. Ct. Rep. 533.

Was appellant a depositor who was entitled to preference of payment over all other creditors? "A bank depositor is one who delivers to or leaves with a bank money subject to his order." And. Law Dict. 343, 344; Newmark, Bank Deposits, § 12. Deposits made with bankers are either general or special. In the case of a special deposit of money the bank merely assumes the charge or control of it, without authority to use it, and the depositor is entitled to receive back the identical money deposited. 1 Morse, Banks, § 183. The relation thus created is that of bailor and bailee. Money received by a bank on general deposit becomes the property of the bank, and can be used by it as other moneys belonging to it, the relation between the bank and the depositor being that of debtor and creditor; "that kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker." Commercial Nat. Bank v. Armstrong, supra; Wray v. Insurance Co., 34 Ala. 58; Alston v. State, 92 Ala. 124, 9 South. Rep. 732.

The contention of the learned counsel for appellant is that his case meets this definition of a general depositor. We cannot agree with this contention. Appellant did not leave its money with the McNab Bank subject to its order, or to be returned to it on call. It did not, for its own convenience, part with the title to its money, and loan it to the bank. There was no contract, express or implied, that the collection from Morris on appellant's account was to be a deposit of any kind, but it is clear that it was intended that the money received from Morris should be remitted in "a reasonable time" from date of collection. Appellant inclosed its draft on Morris to the McNab Bank "for collection and returns." Morris took up the draft with his check on the McNab Bank, and on the same day the latter forwarded to appellant exchange on a New

York bank for the amount of Morris' indebtedness. The draft was not paid, but this did not alter the relation between appellant and the McNab Bank. The bank still owes the debt. But we find that under the facts of the case appellant has no lien on the funds of the bank in the hands of the receiver, and was not a depositor entitled to preference over the other creditors of the bank, within section 17, art. 14, of the constitution of the state of Alabama. The decree of the court below is affirmed.