## FIRST NAT. BANK OF ST. PETERSBURG, FLA., et al. v. CITY OF MIAMI, FLA.

### No. 6795.

Circuit Court of Appeals, Fifth Circuit.

March 1, 1934.

Kenneth I. McKay, of Tampa, Fla., and Arthur R. Thompson and Dean Aikin, both of St. Petersburg, Fla., for appellants.

C. I. Carey, of St. Petersburg, Fla., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is a suit to charge moneys of a failed bank which has passed into a receiver's hands, with a trust for the amount of a collection item on itself·sent to the bank for collection and remittance.

When it was here before on the city's appeal from a decree dismissing the bill on motion, we thought the allegations of the bill

sufficient, if proved,[1] and we sent the cause back to be tried on the merits. City of Miami v. First National Bank of St. Petersburg (C. C. A.) 58 F.(2d) 561. It has now been tried on that bill.

In defendants' answer the drawing, the sending, and the marking of the draft paid were admitted. It was admitted, too, that at all times after the receipt of the check the bank had in its possession more than $5,000 in cash, and that more than that amount passed to the receiver. It was denied, however, that the bank had actually collected and held any sum of money for payment over to the owner of the draft. It was alleged that there were merely bookkeeping entries in the accounts and on the records of the bank, which resulted not in segregating and setting apart a sum of money to which a trust could attach, but in creating a debit. On the trial it was agreed that the bank did not, on accepting the check for $5,000 drawn on it, and marking it paid, segregate and set apart any cash as representing the proceeds. That it merely made entries on its books, charging the account of the drawer, and crediting the First National Bank of Tampa with the amount of the remittance draft forwarded. The credit balance of the drawer was thereby reduced $5,000, the check was marked paid and delivered to the drawer, and it has never been returned to the complainant. The remittance draft on the Tampa bank was rejected when it arrived, for want of funds.

The District Judge thought the case was proven as it was pleaded, and that a decree for the city was demanded by our decree of reversal. The receiver insists that the city failed to prove the allegations on which our opinion rested, that the bank had actually collected and was holding for it $5,000. That the agreed statement on which the case was tried shows that there were merely bookkeeping entries by which the debit to the drawer was canceled and a debit to the forwarding bank set up. It argues, therefore, that the conclusion of our former opinion, "The allegations of this bill plainly present facts which show that the bank received money of plaintiff's for a special purpose, to wit, to remit it, to which it was bound to apply it; that it has not so applied it, and that it still has the money. Under such circumstances, equity charges a trust upon the funds in the hands of the receiver," City of Miami v. First Nat. Bank, supra, at page 565 of 58 F.(2d), is not applicable here. That the agreed facts establish that the bank did not receive any moneys of plaintiff which it could or did hold in trust for it. That it merely received a check drawn on itself, payable to plaintiff's order, and by bookkeeping entries "it shifted its liability," substituting the forwarding bank in the place of the drawer as creditor for the amount of the draft. It insists, then, that our former opinion is not authority for the judgment plaintiff got. It argues further, however, that if it was intended by that opinion to hold more than that a failed bank which has collected actual moneys in a segregated and identified form for remittance, holds them in trust for that purpose, and that such a trust is enforcible against the receiver of the bank, the opinion is not a correct statement of the law.

We agree with appellant that the case proven is not the case alleged, that as proven no case of trust was made out, and that the decree must be reversed. As alleged the draft "was presented to the Petersburg bank for payment and was paid," as proven there was no payment. The draft was indeed marked paid, but the payment thus evidenced was not in fact the payment of moneys or of any identified or identifiable thing. It was merely a form of bookkeeping; "it was but a shifting of its liability" from the drawer to the forwarding bank. Anheuser-Busch v. Clayton (C. C. A.) 56 F. 759, 760. As alleged "said sum of $5,000 thus collected and held for it by the St. Petersburg Bank is still in the possession of the bank and its receiver." As proven, no sum whatever was collected and held for plaintiff by the St. Petersburg bank to which a trust could attach. In this state of the proof to hold the bank as trustee would be to hold it a trustee not of a thing, but of a claim against itself, a holding on its face so artificial and unreal as to be impossible. It is true enough that the liability of the bank as debtor was as completely and effectively

[1] The allegations we thought sufficient to charge the cash in the receiver's hands with a trust were: "That the check drawn on the First National Bank of St. Petersburg, Florida, was by the First National Bank of Miami in which it was deposited by the City, sent to the St. Petersburg bank for collection and remittance. That it was presented to the Petersburg bank for payment and remittance and was by that bank paid. That in making the remittance of said sum the Petersburg bank issued its draft therefor, but before the draft was paid and before the sum of $5000 was transmitted, the Petersburg bank failed. That the funds of the drawer with the Petersburg bank were sufficient to make payment and the check was marked paid and remitted to the drawer. That when it closed the bank had in its possession cash in excess of complainant's check of $5000, and the said $5000 check, as heretofore stated, has never been returned to complainant and said sum of $5000 thus collected and held for it by the St. Petersburg Bank, has not been returned to complainant nor to any one for it, but said sum of $5000 is still in the possession of the bank and of its receiver."

fixed by the proceeding it went through in this case as it would have been had the collection been made at the window, and the money deposited with it.

"There are some disadvantages of sending a check for collection directly to the bank on which it is drawn, but when such bank performs the dual function of collecting and crediting the transaction is closed, and, in the absence of fraud or mutual mistake, is equivalent to payment in usual course. National Bank v. Burkhardt, 100 U. S. 686, 689, 25 L. Ed. 766, 768. In the present case [which was to hold the bank as debtor for a deposit] it was as though an officer of the Macon bank had presented the check to the teller of the Nashville bank, and, on receiving the money, had paid it back over the counter for deposit to the credit of the Macon bank." American Nat. Bank v. Miller, 229 U. S. 520, 33 S. Ct. 883, 884, 57 L. Ed. 1310.

■■ When, however, it is sought, as here, to hold the bank on whom the check is drawn not as debtor, but as trustee, it must be made to appear that there was an agreement expressly made or implied in law from the relation, that the bank should collect and hold the moneys in trust, and that it actually did so. Proof short of this will not suffice. Nothing more need be shown. We have not held differently in the Miami Case. In that case we held that augmentation, in the sense of bringing moneys into the bank from outside, was not necessary to charge a collecting bank with a trust for collections actually made. Augmentation by bringing money into the bank from outside, of which so much is made in the federal cases from other circuits, is indeed often significant in determining whether a trust will be declared and enforced, but its significance is only evidential in pointing to and identifying a res. Notwithstanding augmentation, that is, new money coming into a bank, no trust will be raised if the money is collected under the understanding that the collecting bank is to become debtor to the owner of the item. A trust will be raised where whether new money comes in from the outside or not, moneys to which a trust can attach are identified by segregation and setting apart, and there is no agreement that the bank's agency for collection becomes debtorship for the proceeds. In the Miami Case we rejected the view expressed in Hecker-Jones-Jewell Milling Co. v. Cosmopolitan Trust Co., 242 Mass. 181, 136 N. E. 333, 335, 24 A. L. R. 1148, a collection case, that "by the reasonable construction of their acts the parties must be held to have contemplated the relationship of debtor and creditor after the collection." We held that the agency for collection continued for the remittance after the collection was made and that a trust attached to the funds collected. We especially rejected the view that where the circumstances showed a special deposit, or a trust created in any other way by agreement, express or implied, it was necessary to prove augmentation in the sense of moneys coming into the bank from outside. We pointed out that our case of Anheuser-Busch, supra, so often incorrectly cited in support of the augmentation theory, decided no such thing. That it went off on the plaintiff's conceded inability to trace its funds. We emphasized in the Miami Case that the allegations of the bill plainly showed that the bank received money of plaintiff's for a special purpose to remit it. We now find, the proofs in, that the case is not distinguishable from Anheuser-Busch, supra. Here, as there, there was "but a shifting of liability." Here, as there, there was no collection of any sum at all, no identifying or segregating of anything to which a trust could attach. Here, as there, plaintiff's case fails, not because there was no augmentation in the sense of bringing money in from outside, but because, contrary to the allegations of the bill, there was no res identified and set up to which a trust could attach.

We think we should say, however, in fairness to the District Judge, that though we do construe our former opinion more narrowly than he does, we are in that regard our own interpreters, and we recognize that some of the things said there, and especially some of the cases we cited, do give support to the view he took, that we intended to broadly hold that a trust arose, though no actual collection was made and only bookkeeping entries resulted. The editor of the comprehensive note, "Following or identifying trust funds in assets of insolvent bank," 82 A. L. R. 46, takes the same view of our opinion the District Judge did. At page 97 of 82 A. L. R. he places it in solitary grandeur under "United States" at the head of a list of authorities cited by him as representing the majority view, that "where an insolvent bank * * * [makes] a collection of paper * * * merely by charging the amount of such paper to the account of the obligor in such bank, where no money changes hands in the transaction," a trust arises.

We disagree with this estimate of the opinion; we find nothing actually decided in it from which we wish to depart. We recognize, however, that in assuming as the basis

of it that the bill alleged the actual collection of an identified and segregated sum we may have ascribed to its language a more positive effect than that language was entitled to, especially in view of the contrary custom of banks in handling such collections, so general as to be almost, if not quite, matter of judicial knowledge.

We have, we think, already in other cases, McNair v. Oesterreicher, 63 F.(2d) 876; Spurway v. Frick Co., 63 F.(2d) 875; Smith v. Zemurray, 69 F.(2d) 5; Pottorff v. Key, 67 F.(2d) 833; Wisdom v. Keen, 69 F.(2d) 349, made it sufficiently plain that to obtain preferential treatment in the distribution of the assets of failed banks, one seeking to charge the fund in the hands of the receiver for the benefit of all the creditors, as being his property or its proceeds, has a heavy burden of proof, and unless he clearly and certainly identifies the fund he must fail. Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806. We do not understand anything decided in the Miami Bank Case, supra, contravenes these views. Any expression in it, which admits of a contrary construction, is expressly disapproved.

The decree is reversed, and the cause remanded, with orders to dismiss the bill.