**ADAMS v. CHAMPION.**

No. 5076.

Circuit Court of Appeals, Seventh Circuit.
April 17, 1934.

Rehearing Denied June 13, 1934.

Franklin L. Velde and Wm. S. Prettyman, both of Pekin, Ill., for appellant.

Ira J. Covey and Edwin L. Covey, both of Peoria, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

On September 7, 1928, John Fitzgerald deposited with the bank certain farm mortgage notes, and certificates for thirty shares of the bank's stock, as collateral security for his renewal note of that date in the amount of $26,000. On October 26, 1928, an involuntary proceeding in bankruptcy was filed against him, and on November 16, 1928, he was adjudged a bankrupt.

On July 20, 1929, appellee filed a bill against the bank to recover preferences made

within four months immediately preceding the filing of the petition in bankruptcy which included the collateral pledged as security for Fitzgerald's note for $26,000. The answer filed by the bank is not in this record, but from the court's memorandum opinion it is obvious that the issues were: (1) Did the bank at the time of the transfer have reasonable cause to believe that Fitzgerald was insolvent, and (2) did the bank still have in its possession any of the pledged collaterals or their proceeds. The matter was referred to a master who answered both questions in the affirmative, and found the issues for the trustee. The bank excepted to the findings, and the court sustained the master on June 17, 1932, and on June 24, entered a decree ordering the collaterals or their proceeds delivered to the trustee.

■ In the meantime on January 7, 1932, the bank had closed its doors, and on January 26, 1932, the Comptroller of the Currency had appointed appellant as its receiver. As a part of the decree it was ordered that a certified copy of it be sent by registered mail to the Comptroller, in which he was ordered on behalf of the bank to comply. with the terms of the decree, and it is admitted that the letter was received by him. From this decree no appeal was prosecuted. Up to this time, so far as the record shows, neither the Comptroller nor the receiver had knowledge of this proceeding. This fact, however, would have no effect on the binding force of the decree upon him (Bereth v. Sparks (C. C. A.) 51 F.(2d) 441, 80 A. L. R. 909), and he complied with its terms except as to the four following items of collateral which form the basis of this controversy:

Charles Graff mortgage note and interest ..................... $3,183.78
W. C. Sommers mortgage note and interest................. 1,058.98
Ten shares of Farmers bank stock and dividend........... 3,030.00
Veesaert notes and interest...... 1,597.31

On August 30, 1932, appellee filed his petition for an order requiring appellant to pay petitioner in cash the four items above referred to, on the grounds that the first two items had been paid to the bank in the early part of 1929, the third converted into cash about the same time and the last item had been paid on December 13, 1930, and that the receiver now held the entire amounts for the appellee as trustee ex maleficio. The issues were joined by appellant's answer in which he admitted the validity of appellee's

claim as an unpreferred claim but denied the existence of a trust ex maleficio, or that the bank's assets, by any of these transactions had been augmented, or that any part of the funds demanded had been traced into his hands. All the facts were stipulated and it was therein agreed that either the trustee or the receiver might apply to the court for a decision and decree as to any matter in dispute. Upon submission the court made findings of fact and rendered its conclusions of law favorable to appellee with respect to the four items in controversy. The court's findings which are material to the questions here presented are substantially as follows: That the bank received the four items of collateral as an unlawful and recoverable preference and treated them as cash and shortly thereafter converted them into cash which was intermingled with the cash of the bank and treated by it as its own; that when the bank closed it had on hand in cash and cash items, $36,054.76, which afterwards went into the hands of the receiver; that the least amount in cash and cash items in the bank during the period from February 5, 1929, to the close of the business on January 7, 1932, was $30,548.61; that the bank by collecting bankrupt's notes and bonds and by sale of his bank stock without the knowledge or consent of the trustee, held the proceeds of such collections and sale amounting to $8,870.07 as a trustee ex maleficio; and that said funds were in the possession of the bank when it closed.

When Fitzgerald's securities were pledged to the bank, it can not be doubted that the bank knew that he was insolvent, or by the exercise of ordinary diligence ought to have known it, and it is not denied that the other elements necessary to constitute a preference were present. These facts were determined by the first decree and were supported by substantial evidence. There was neither exception nor appeal with respect to that decree, and we do not understand that appellant in this proceeding is denying that there was an unlawful preference.

■■ It is first contended by appellant that the court erred in finding that the bank was a trustee ex maleficio for the bankrupt. In his brief it is stated, "We do not admit there was a trust relationship nor do we confidently deny it." Counsel for appellee calls our attention to what he styles certain admissions with respect to the existence of a trust, made in appellant's brief in the District Court. That brief is not in this record and consti-

tutes no part of it, and counsel should know that it should not be referred to in argument. It is quite obvious from the facts found, however, that some form of trust relationship existed between Fitzgerald and the bank and that it was a constructive trust relationship, due to the fact that the bank had wrongfully taken possession and assumed control of Fitzgerald's property. Baltimore & Ohio Telephone Co. v. Interstate Telephone Co. (C. C. A.) 54 F. 50; In re Maher (D. C.) 144 F. 503. We think the court properly held that it was a trust ex maleficio. Smith v. Mottley (C. C. A.) 150 F. 266; Brennan v. Tillinghast (C. C. A.) 201 F. 609.

■ It is next contended by appellant that the bank's assets were not augmented by the amounts received by it in payment of the obligations of the collateral. That is no doubt true, but the assets of the bank had been previously augmented when it wrongfully took possession of the collateral obligations. At that time the trust attached, and the fact that the collateral obligations were subsequently liquidated would not destroy the trust, and it would make no difference whether the collateral obligations were paid from money in the appellant's bank or from any other source.

■ It is further contended by appellant that the property in controversy has not been traced into his possession, which of course is necessary before appellee can recover. In Schumacher v. Harriett (C. C. A.) 52 F.(2d) 817, 818, 82 A. L. R. 1, it was disclosed that plaintiff had delivered life insurance checks to the bank to purchase bonds for plaintiff with the proceeds; that the checks were received by the bank as cash and treated by it as such, plaintiff receiving immediate credit therefor; that it forwarded the checks for credit to correspondent banks, in which on that day, and for several days thereafter, the sending bank had credit balances considerably in excess of the respective amounts so deposited. Those balances were gradually reduced until, at the time of the depositing bank's failure, the account with one of the correspondent banks showed an overdraft, and the account with another bank showed a small balance which was credited upon a note which the correspondent bank held. It was there said that the plaintiff, under those circumstances, had traced the trust fund in the bank receiver's hands. The court said, " * * * Where a bank acting as trustee mingles a trust fund with its other funds, the common fund resulting is impressed with a trust to the amount of the trust fund which

has been so commingled and lost its identity; and in such case the cestui que trust is entitled to have the trust declared and the trust fund separated from the other funds, even though the bank subsequently to the commingling may have added to and made payments from the common fund, as the presumption is that it respected the trust and did not make payment from the trust property. A limitation upon the rule is that the amount for which the trust is declared may not exceed the smallest amount which the common fund contained subsequent to the commingling of the trust funds. Knatchbull v. Hallett, 13 Ch. D. 696; Central National Bank v. Conn. Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693; Poisson v. Williams (D. C.) 15 F.(2d) 582; Brennan v. Tillinghast (C. C. A. 6) 201 F. 609, 612; Empire State Surety Co. v. Carroll (C. C. A. 8) 194 F. 593, 605." Quoting from the opinion of Judge Sanford in Brennan v. Tillinghast, the court said, " 'It is undisputed that the proceeds of the sale of Brennan's stock, wrongfully converted by the Ironwood Bank to its own use, constituted a trust fund, which did not lose this character when mingled with other moneys of the bank, and that Brennan was entitled to recover the amount thereof as a preferred claim, if, and to the extent that, he sustained the burden of proof of tracing this money, either in its original shape or in a substituted form, into the moneys which came into the hands of the receiver as part of the assets of the bank. (Citing cases.) And proof that the tort-feasor has mingled the trust funds with his own and made payments thereafter out of the common fund, is, nothing else appearing, a sufficient identification of the remainder of that fund coming into the hands of the receiver, not exceeding the smallest amount the fund contained subsequent to the commingling, as trust property, under the legal presumption that he regarded the law and neither paid out the trust fund nor invested it in other property, but kept it sacred.' "

With respect to tracing the fund in the Schumacher case, the court said, "As the fund upon which the trust is asserted * * * is the fund of cash and cash items which passed into the hands of the receiver, the question in the case is whether the $8,500 of plaintiff has been traced into that fund. * * * We think that this question must be answered in the affirmative. The life insurance checks were received by the bank as cash and were treated by it as such. They increased the cash and cash items in the tills of the bank at the time. When it

placed them to its credit in the Richmond and New York banks, it was dealing with them as its own; and the presumption is that cash which was left in its tills was intended to be subject to the trust. While it had, of course, the right to collect the checks, it had no right to place their proceeds to its credit in other banks without holding an equivalent amount in cash in its own vaults to satisfy the trust which it had assumed towards plaintiff; and we must assume that it respected the trust, as 'equity imputes an intention to fulfill an obligation.' "

The facts in the Schumacher case are quite analogous to those found by the court in the instant case, and a perusal of the evidence leaves no doubt in our minds that the court's findings here are supported by substantial evidence. We are convinced that the bank's assets were augmented by, and to the extent of, the proceeds of the collateral, and that those proceeds have in law been traced into the receiver's hands.

It is no doubt true, as appellant insists, that the only preference expressly allowed by the Act of Congress (12 USCA § 137) in cases of insolvency of a national bank is the one to the United States for advances in redeeming notes of the bank, but that statute was never intended to, and does not, prevent a preference for trust funds. It is indeed doubtful if Congress could prevent such a preference if it so desired.

Decree affirmed.