**NATIONAL BANK OF AMERICA et al. v.
UNITED STATES FIDELITY &
GUARANTY CO.**

**No. 5124.**

Circuit Court of Appeals, Seventh Circuit.
June 4, 1934.

Willis C. McMahan, Oscar C. Strom, and George W. Hulbert, all of Gary, Ind., for appellants.

Samuel O. Pickens, R. F. Davidson, Fred C. Gause, Arthur L. Gilliom, and Owen Pickens, all of Indianapolis, Ind., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge.

Appellee instituted this action in equity against the National Bank of America of Gary, Indiana, and David H. Jennings, its receiver, to recover the amount of a check which had been drawn on the Gary State Bank and mailed to and collected by the National Bank of America through the Gary Clearing House before the National Bank had closed.

On December 30, 1931, appellee received from the Commercial Trust Company of Gary that company's check for $2,196.89, dated December 29, 1931, and payable to the order of appellee. On the date of its receipt appellee endorsed and deposited it with the Security Trust Company of Indianapolis, which in turn endorsed and delivered it to the Fletcher American National Bank of Indianapolis. That bank also endorsed and mailed it to its correspondent, the appellant bank, for collection and remittance. The last named bank received it on the morning of December 31, 1931, and on the same day presented and collected it in the manner hereinafter described, from the Gary State Bank through the Gary

Clearing House, whose membership consisted solely of the Gary banks hereinbefore mentioned.

In addition to this check, appellant bank had received other checks drawn on the Gary State Bank and the First National Bank of Gary, and as a result of the clearings of that day, appellant bank owed the clearing house $1,044.75, for which sum it drew its check on the Continental Illinois Bank and Trust Company of Chicago, payable to the order of the clearing house. As a result of the clearing house transaction the Gary State Bank received the check for $2,196.89, stamped it paid, charged it to the account of the Commercial Trust Company, and delivered it to the drawer.

All the banks herein referred to were closed for holiday on January 1, 1932, and on Sunday, January 3, the directors of appellant bank met and adopted a resolution not to open for business on January 4, at which time the bank was insolvent. The Comptroller of the Currency was notified, and the receiver took charge of the assets at eight o'clock on the morning of January 4.

On and prior to January 2, 1932, it was the custom of the Fletcher Bank to send checks drawn on Gary banks to appellant bank for collection, and the custom of the latter to present those checks to the Gary Clearing House for collection, and when collected, appellant bank would mail its check or draft on its correspondent bank to the Fletcher Bank in payment of the collection so made. That custom was followed in this instance.

The total amount of checks sent by the Fletcher Bank to and received by appellant bank on December 31, was $3,660.83, and they were collected on that date through the clearing house, and appellant bank drew its draft on the Continental Bank for that amount and sent it to the Fletcher Bank, which in turn mailed it the same day to the Continental Bank, by which it was received on January 4, after appellant bank was closed. Hence payment was refused. At that time appellant bank had on deposit with the Continental a sum in excess of the amount of the draft.

The Fletcher Bank received the unpaid draft from the Continental on January 5, 1932, and charged it to the account of appellant bank, which left a deposit balance due appellant bank from the Fletcher Bank of $333.91, which was paid to the receiver on March 3, 1932. Subsequently upon demand the Fletcher Bank paid to the receiver the amount of the draft which it had charged to

appellant bank, and thereupon charged the amount of the check for $2,196.89 against the Security Trust Company, which in turn charged the same amount to appellee's account. At the time the receiver took charge of appellant bank there were, and ever since that time there have been, in its possession, cash items in excess of appellee's claim.

The court found the facts specially and rendered its conclusions of law, and entered a decree for appellee for the full amount of the check, with interest, as a preferred claim. The theory upon which the bill and the decree were based was that at the time of the bank's insolvency it held in trust the amount of the proceeds of appellee's check among its cash and cash items, and that those proceeds constituted no part of the bank's assets, hence were not distributable to its creditors.

Whether a trust relationship existed between the bank and appellee, by virtue of the circumstances hereinbefore set forth, is to be determined by sections 1, 2, 9, and 10 of the Indiana Uniform Bank Collection Code, chapter 164, Indiana Acts 1929. Section 1 defines the word "bank" as meaning any person, firm or corporation engaged in the business of receiving and paying deposits of money, and the word "item" as meaning any check, note or other instrument for the payment of money. Section 2 provides that, unless otherwise agreed, a bank receiving an item on deposit for collection, and all subsequent banks receiving it for that purpose, are agents and subagents, respectively, of the depositor. Section 9 provides that where ordinary care is exercised, any agent collecting bank, without becoming responsible as debtor therefor, may receive in payment of an item, whether presented by mail, through the clearing house, or over the counter of the drawee or payor, in lieu of money, either the check or draft of the drawee or payor upon another bank, or check or draft of any other bank upon any bank other than the drawee or payor of the item, or it may make such settlement as may be customary in a local clearing house or between clearing banks or otherwise. A proviso of this section states that the agent collecting bank shall become liable as debtor for the item as if it had actually received payment in cash, if at the time of receipt it shall request or accept in payment an unconditional credit which has been given to it on the books of the drawee or payor, or on the books of any other bank. Section 10 provides that any agent collecting bank, in lieu of money, may receive from any subsequent bank in the chain of collection, remittance for an item which has been paid, in the same

manner as set forth in section 9, and with the same provision with respect to establishing a debtor relationship upon the request or acceptance of an unconditional credit. In view of those sections of the Indiana Code it is obvious that the relationship existing between appellant bank and appellee, from and subsequent to the time it received the check for collection was that of agent and principal, and not mere debtor and creditor.

In the absence of statutory authority, or authority expressly granted by the terms of the agency, the collecting bank had no right to accept anything in payment except legal tender money, and if it had done so, the relationship of debtor and creditor would have arisen because the collecting bank in accepting other than cash in payment of the check would not have been acting within the scope of its agency (Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261), and the trust relationship would not follow a subsequent transfer of the thing received as payment. But the first clause of section 9 specifically authorized the bank to receive the exchanged checks drawn on it and presented to it through the clearing house, in lieu of money in payment of appellee's check, without becoming responsible as debtor. It is true that the proviso in section 9 supplies means for establishing a debtor relation, but those means are not present here. It must be held under the state statute, therefore, that appellant was the agent of appellee, and in receiving the proceeds of the check it did so as trustee for appellee.

It is contended by appellants, however, that the Indiana statute will not override the provisions of R. S. § 5236 (12 USCA § 194), which provides for the distribution by the Comptroller of the entire assets of the bank, giving no preference to any claim except for moneys to reimburse the United States for advances in redeeming the notes. With respect to state legislation affecting national banks, the Supreme Court said, in McClellan v. Chipman, 164 U. S. 347, 17 S. Ct. 85, 87, 41 L. Ed. 461:

"First. National banks 'are subject to the laws of the state, and are governed in their daily course of business far more by the laws of the state than of the nation. All their contracts are governed and construed by state laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on state law. It is only when the state law incapacitates the banks from discharg-ing their duties to the government that it becomes unconstitutional.' First National Bank v. Commonwealth, 9 Wall. 362 [19 L. Ed. 701].

"Second. 'National banks are instrumentalities of the federal government created for a public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt by a state to define their duties, or control the conduct of their affairs, is absolutely void, whenever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of. the national legislation, or impairs the efficiencies of these agencies of the federal government to discharge the duties for the performance of which they were created.' Davis v. Elmira Savings Bank, 161 U. S. 275, 283, 16 S. Ct. 502 [40 L. Ed. 700]."

There is nothing in the Indiana statutes that attempts to interfere with the Comptroller's distribution of the bank's assets. The proceeds of appellee's check were not rightfully a part of its assets, and there is no effort here to secure a preference over any creditor in the distribution of the assets, or to interfere with the Comptroller in that respect. The effort on the part of appellee is merely to recover its own property which under the laws of Indiana was held in trust by the bank as agent for appellee. We know of no federal pronouncement which holds that a national bank may include in its distributable assets to its general creditors a fund which is held by it as trustee, when that fund has been traced into the hands of the receiver. There has been a contrariety of opinion among the state courts as to when a trust relationship arises with respect to banks acting as collectors of commercial paper, but not as to the Comptroller's duty when once that relationship is established. The right of Indiana to establish that relationship by legislative enactment was well within its powers and is controlling here.

The mere fact that a debtor and creditor relationship did not arise, under the Indiana statute, by virtue of acceptance and receipt by the appellant bank of some medium other than cash in payment for appellee's check, is not sufficient, however, to support a finding for appellee, unless it be shown that as a result of the transaction there was an augmentation of the cash and cash items of appellant bank; and that the proceeds of the collection have been traced into the hands of the receiver.

It is contended by appellants that the

assets of the insolvent bank were not augmented by the transaction, for the reason that it received no actual money on account of the collection item, but used the check which it had received from the drawee, Gary State Bank, to pay items drawn on itself in the clearings. The cases cited to this proposition unquestionably support it, but it is contended by appellee that in none of those cases was the Uniform Bank Collection Code involved; that there the court held that the collecting bank had violated its agency agreement by wrongfully accepting payment in other than cash, which had the effect of raising a debtor and creditor relationship, whereas the Indiana enactment authorized the character of the payment and preserved the relationship of principal and agent.

It is quite obvious that that result was one of the principal objects of the Uniform Bank Collection Act, and we are convinced that its involvement here is quite sufficient to distinguish the instant case from those relied upon by appellants.

Appellee argues that when appellant bank exchanged appellee's check on the Gary State Bank for checks which the latter held against the former at the clearing house transaction, appellee's check, by virtue of section 9 of the Indiana act, was not used to pay the appellant's debt to the clearing house, but it was a collection of the check in a manner authorized by the Act; hence that which it received is to be considered as proceeds of the check, and since appellant bank did not request or accept an unconditional credit for the item on the books of the Gary State Bank, or of any other bank, as provided under section 9, the bank did not become responsible as debtor for either the check or its proceeds, but it still was liable as agent. It further contends that the proceeds thus received in payment were the same as cash to appellant bank and were in contemplation of section 9 automatically reflected in the cash and cash items of that bank, after the clearing house transaction, because the cash and cash items became instantly relieved from the obligations of the checks received in exchange to the extent of appellee's check, and that the legal effect of the transaction was a substitution of cash and cash items held by appellant bank to the extent of $2,196.89 for checks upon itself which it received as agent in payment of appellee's check. Hence it says there was augmentation of the cash and cash items to the extent of the proceeds of appellee's check, toward which appellant bank remained a fiduciary.

We are in accord with appellee's contention in this respect. It is conceded by appellants that if the balance of the clearings had been in favor of appellant bank it would be presumed that such balance was the proceeds of the collection item and should be allowed as a preferred claim, providing said balance had been paid in cash, and had been traced into the hands of the receiver. It must also be conceded that if appellant bank had paid cash to the clearing house for said bank's outstanding checks, and the clearing house had in turn delivered the cash to the bank in payment of appellee's check, and the proceeds had been traced into the hands of the receiver, those proceeds would be considered as held in trust by the bank for appellee by reason of the relationship of principal and agent. Under those circumstances augmentation of assets would clearly appear, notwithstanding the fact that the bank's assets were the same in amount as they were before the clearings, because during such process of clearing the assets would have been reduced by the cash payment to the clearing house and augmented in the same amount by the cash payment of the clearing house to the bank. Under the Indiana statute, however, it was immaterial whether actual cash passed in the transaction, for the result is identical, and the relationship of debtor and creditor did not arise. Appellant bank held the proceeds of appellee's check in a fiduciary capacity and it was its duty to treat them as such. This it did by immediately retaining and canceling its own checks received from the clearing house, and drawing its draft on its cash balance in the Continental and sending it to the forwarding bank at Indianapolis. In other words, instead of taking the cash from its vaults and paying its indebtedness at the clearing house and in turn receiving it from the clearing house in payment of appellee's check, which in theory it was its duty to do, appellant bank obviously considered these things as having been done. To hold otherwise would be to presume that it had applied the proceeds of appellee's check to the payment of its own indebtedness thereby violating its trust relationship. The law will not presume that this was done, but rather that it regarded its trust obligation and kept it sacred. Brennan v. Tillinghast (C. C. A.) 201 F. 609. We think it clear that the legal effect of the transaction was a substitution of cash and cash items held by appellant bank to the extent of $2,196.89 in amount, for checks upon it which it received as agent in payment of appellee's check. It is stipulated that, but for the collection of appellee's check, appellant bank would that day have actually paid to the clearing house the sum of $2,196.89 more than it did pay, and the assets for dis-

tribution to creditors would have been decreased by that amount. In Ellerbe v. Studebaker Corporation of America (C. C. A.) 21 F.(2d) 993, 997, the court said, "* * * there can be no doubt that, as a result of the collection of the draft of complainant, the assets which came into the hands of the receiver were greater by the amount of the collection than they would have been had the collection not been made, and consequently that there was exactly that much! more for division among creditors than there would have been otherwise."

 If appellee's check is to be considered as having been paid by the exchange of the unpaid checks of appellant bank, then it is clear that appellee would have been entitled to the bank's checks which were delivered to it by the clearing house, for under those circumstances appellee would have been subrogated to the rights of the original payees of the bank's checks. But it is obvious that the bank did not consider that appellee's check had in fact paid the bank's checks, for it retained and cancelled them, and this it could not rightfully do unless a corresponding amount of cash on hand be considered as substituted, on behalf of appellee, for the unpaid checks received from the clearing house. If appellants' contention be sustained they are placed in the situation of having received and retained the full amount of appellee's check, and also the bank's own checks ·for which it or the receiver paid nothing. It cannot be denied that appellee's check was paid by the Gary State Bank, and its assets were reduced by that amount, and it is equally clear that the same amount came into the possession of appellant bank. The clearing house transaction was practically instantaneous, yet it consisted of two distinct acts, the collection of appellant bank's obligations, and the payment of appellee's check. If either be considered as happening before the other, then it is clear that appellant bank's assets were augmented by the proceeds of appellee's check, and they were depleted by the payment of the bank's outstanding checks, and as a result the assets aggregated the same as before the clearance. As between the clearing house and appellant bank the latter's checks as a matter of commercial convenience were considered rightfully paid under the Indiana law, but as between the bank and appellee they were not paid by the bank, unless it be considered that a corresponding amount of cash was substituted for the unpaid checks. To hold that there was no substitution would be presuming that the bank was guilty of wrongdoing which is utterly inconsistent with its actions, and permit the creditors to participate in augmented assets to which they are not entitled, as a result of the wrongdoing. To hold otherwise would be consistent with the bank's actions and establish its good faith in performing the obligations of the trust. We hold, therefore, that the bank's assets were augmented by the receipt of the proceeds of appellee's check, and that those proceeds went into and were intermingled with the cash balance of the bank which was received by the receiver. Since the amount in the hands of the receiver was never reduced below the amount of the check, it follows that appellee is entitled to recover an amount equal to the face of the check. Schumacher v. Harriett (C. C. A.) 52 F.(2d) 817, 82 A. L. R. 1.

We are convinced, however, that appellee is not entitled to recover interest. White v. Knox, 111 U. S. 784, 4 S. Ct. 686, 28 L. Ed. 603; Richardson v. Louisville Banking Company (C. C. A.) 94 F. 442; Hallett v. Fish (C. C.) 123 F. 201.

That part of the judgment which allows interest is reversed, and in all other respects the judgment is affirmed. The cause is remanded with instructions to modify the judgment by eliminating the amount allowed for interest.