### BROWNELL v. TURMAN.
#### No. 5343.

Circuit Court of Appeals, Seventh Circuit.
March 12, 1935.

914

Paul Stratton, of Sullivan, Ind., for appellant.

Charles H. Bedwell, of Sullivan, Ind., and Cooper, Royse, Gambill & Crawford, of Terre Haute, Ind., for appellee.

Before EVANS and SPARKS, Circuit Judges, and BARNES, District Judge.

SPARKS, Circuit Judge.

By this equitable action appellee sought to secure a preferred claim on the assets in the hands of appellant by virtue of a trust in the proceeds of appellee's bonds which had been collected by the People's National Bank and Trust Company of Sullivan, Indiana, hereafter referred to as People's Bank. The District Court found the facts specially and rendered its conclusions of law thereon in favor of appellee. A decree was entered accordingly and from it this appeal is prosecuted.

In substance the court found the following facts: On May 14, 1932, appellee delivered to the People's Bank for collection, matured bonds of the value of $5,459, with attached interest coupons in the sum of $356.98. It was then and there agreed that the money collected upon the principal of the bonds should not be credited to appellee's checking account but should be held by the bank and reinvested by it in other gravel road bonds issued by municipal units of Indiana, and that the interest collected should be credited to appellee's checking account in that bank. The amount of the interest coupons was so credited and entered upon his pass book. On the same day, without appellee's knowledge, the bank carried the bonds as a cash item, and entered upon its ledger sheet, evidencing appellee's checking account, an item crediting appellee with a sum equal to the par value of the bonds, but that item was not entered upon appellee's pass book until June 27, 1932, two days after the bank closed.

On the day the bonds were deposited by appellee for collection and reinvestment the bank sent them for collection to its correspondent, the Fletcher American National Bank of Indianapolis, except one Sullivan County bond in the sum of $731.50, which was collected by the People's Bank on May 16, 1932, by a check from the Treasurer of Sullivan County drawn on his account with that bank. The Fletcher Bank collected the bonds sent to it and by direction credited the amounts to the account of the People's Bank on the days when they were collected as follows: May 20, $572.50; May 23, $3,800; and May 25, $355.

On May 14, 1932, the total cash reserve of the People's Bank, including its deposits with its correspondent banks, was $128,331.-63. From that time until it closed, the cash in its vaults was not less than $12,000, and on the day it closed its cash on hand was $12,343.27, and its credit with correspondents was $56,029.56. On May 14, 1932, the People's Bank was a depository for the public funds of Sullivan County and at that time had of those funds on deposit the sum of $172,867.77. From that time until the bank closed that deposit was not less than $75,000.

On April 4, 1932, the People's Bank became indebted by note to the Fletcher Bank in the sum of $22,774.53, due ninety days after date, and secured collaterally by notes from the assets of the payor. This was reduced by payments to $13,179.03, as of June 25, 1932. On May 10, 1932, the People's Bank became indebted by note to the Fletcher Bank in the sum of $13,609.27, due ninety days after date which was collaterally secured by notes from the assets of the People's Bank. The collateral notes so held by the Fletcher Bank amounted to $56,-206.23, and when the People's Bank closed its doors, its credit balance of $10,343.23 with the Fletcher Bank was credited upon its two notes. The balance due thereon was paid by the receiver of the People's Bank, and on September 10, 1932, the Fletcher Bank returned to the receiver the balance of the collateral notes.

On May 26, 1932, People's Bank delivered to appellee gravel road bonds that had cost $3,414.93, leaving a balance due appel-

lee in the possession of the People's Bank of $2,044.07. No other bonds were purchased for or delivered to appellee by the bank. On May 16, 1932, the Treasurer of Sullivan County made a cash deposit of $2,170.69 in the People's Bank, and on the same day there were charged to his account checks in excess of $11,000.

The following tabulation discloses the deposit account of the People's Bank with its correspondent, the Fletcher Bank, as shown by the books of each bank on the following dates in 1932:

| People's Bank | | Fletcher Bank | |
|---|---|---|---|
| Date | Balance | Balance | Overdraft |
| May 20 | 2,600.39 | | 2,581.03 |
| May 21 | 11,107.11 | | 2,947.21 |
| May 31 | 3,954.92 | | 346.36 |
| June 6 | 4,685.86 | | 172.29 |
| June 9 | 7,513.68 | | 483.21 |
| June 14 | 4,929.85 | | 182.40 |
| June 25 | 10,394.76 | 10,343.23 | |

The difference in the accounts was due to the fact that People's Bank credited itself with all items for collection sent to Fletcher Bank on the day they were sent, while the latter did not credit the account until the items were received and collected by it.

The assets of a national bank in liquidation must be distributed pro rata among all its creditors. United States Revised Statutes, § 5236 (12 USCA § 194). "The power of the nation within the field of its legitimate exercise overrides in case of conflict the power of the states." Jennings et al. v. United States Fidelity & Guaranty Company, decided by the Supreme Court, February 4, 1935, 55 S. Ct. 394, 399, 79 L. Ed. ——.

In order for appellee's claim to be allowed as a preference it was necessary to establish (1) that the funds claimed by him were impressed with a trust in his favor, (2) that there was an augmentation of the assets of the bank by virtue of the collection of his bonds, and (3) that the augmented assets have been traced into the hands of the receiver, and not merely into the general assets of the bank. See Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288; First National Bank v. City of Miami (C. C. A.) 69 F.(2d) 346; Allied Mills v. Horton (C. C. A.) 65 F. (2d) 708, 90 A. L. R. 1.

In Jennings v. United States Fidelity & Guaranty Company, supra, the Court said: "Under that Code [Bank Collection Code, Indiana Acts 1929, c. 164] § 2, the relation between the forwarding bank and the collecting bank is that of principal and agent until the agent has completed the business of collection. Whether a fiduciary relation continues even afterwards, upon the theory that the proceeds of the collection until remitted to the forwarder are subject to a trust, depends upon the circumstances. In the absence of tokens of a contrary intention, the better doctrine is, where the common law prevails, that the agency of the collecting bank is brought to an end by the collection of the paper, the bank from then on being in the position of a debtor, with liberty, like debtors generally, to use the proceeds as its own."

Here the tokens of a contrary intention upon which appellee relies to sustain the decree are that the People's Bank was orally instructed to purchase other bonds for him with the proceeds of the collections, and was not to credit the collection of the principal upon his checking account. Nothing but the coupons was credited on his pass book until the receiver credited it, but the entire amount of bonds and coupons was, without his knowledge, credited immediately by the bank upon the only account he had with the bank, namely, his checking account. That account was at all times in excess of the principal of the bonds. At the time he left the bonds with the bank he took its receipt for them showing that it had received for collection the bonds "Deposited in The First National Bank, Sullivan, Indiana, by J. E. Turman." That receipt contained the following clauses: "All items are credited subject to final payment in cash or solvent credits. * * * This Bank or its correspondents may send items, directly or indirectly to any bank including the payor, and accept its draft *or credit* as conditional payment in lieu of cash. * * *" (Our italics.) Nothing further is disclosed by the record bearing on this question of the parties' intention as to how the proceeds of the collections should be held, whether in trust or otherwise. The common law rule is that one who collects commercial paper through the agency of banks must be held impliedly to contract that the business may be done according to their well known usages, so far as to permit the money collected to be mingled with funds of the collecting bank. Freeman's National Bank v. National Tube Works Company, 151 Mass. 413, 418, 24 N. E. 779, 8 L. R. A. 42, 21 Am. St. Rep. 461. If it be said that that rule has been modified by statute, yet that would not prevent the parties from agreeing that the rule might

still apply with respect to their transaction. This we conceive to be their agreement, for the receipt expressly stated that the People's Bank might accept the collecting bank's draft or credit in lieu of cash. We think this amounted to a consent that the People's Bank might use the money collected as its own and mingle it with its own funds. Such a privilege seems to us to be inconsistent with the contention that the money collected was to be held in trust, but it is quite consistent with the relationship of debtor and creditor. It is true the People's Bank, contrary to its agreement, credited the amount of the bonds to appellee's checking account, yet that would not enlarge appellee's rights in the absence of any agreement to hold the money in trust, unless it gave rise to a trust ex maleficio. That position we think could not be successfully urged because appellee's rights were in no way lessened by the credit to his checking account. Under these circumstances we think the parties did not intend that the money collected on the bonds should be held in trust.

It is quite probable that the District Court and appellee were misled, as well they might have been, with respect to the continuance of the trust relationship after the collection of the bonds by the Fletcher Bank, by reason of this court's decision in Adams v. Champion, 70 F.(2d) 956, and National Bank of America v. United States Fidelity & Guaranty Company, 71 F.(2d) 618, but since the filing of appellant's brief, those decisions were reversed by the Supreme Court in two decisions rendered on February 4, 1935, 55 S. Ct. 399, 79 L. Ed. ——; 55 S. Ct. 394, 79 L. Ed. ——.

■ We are also convinced that the decree must be reversed for the reason that the money collected was not traced into the hands of the receiver. The most that can be said is that the money collected on the bonds went into the general funds of the People's Bank, although it was held and used as a credit for that bank by its agent, the Fletcher Bank. We are unable to say from the accounts what part of the amounts collected by the Fletcher Bank, if any, were due it on account of overdraft at the precise time of collection, but it is obvious that all of the money collected was left in the Fletcher Bank and was finally used to reduce the obligations of the People's Bank.

■ The stipulation herein recites that on May 26, the People's Bank delivered to appellee gravel road bonds costing $3,414.93, and that afterwards there remained in its possession the sum of $2,044.07 for the purchase of other gravel road bonds for appellee. It is argued, therefore, by him that this stipulation should be construed as an admission that the People's Bank actually received $2,044.07 from the Fletcher Bank and that it must be considered as part of the fund which was turned over to the receiver. With this contention we are not in accord. This stipulation speaks as of May 26, which was the day following that on which the final collection of the bonds was made. At that time it might well be that the Fletcher Bank as the agent of the People's Bank had possession of $2,044.07 of the amounts so collected, and, if so, its possession would be that of its principal, the People's Bank, but it can not be said either from the stipulation or the evidence, that that money ever went into the fund that was a month later paid to the receiver. The evidence does not disclose that any of the money so collected was sent to the People's Bank by draft or otherwise, but the balance in the account at the time the bank was closed was credited on the indebtedness owing the Fletcher Bank by the People's Bank.

Under the rulings in Adams v. Champion, supra, and Jennings v. United States Fidelity and Guaranty Company, supra, the decree is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.