### BROWNELL v. PFAFF & HUGHEL, Inc.

### No. 5189.

Circuit Court of Appeals, Seventh Circuit.

May 1, 1935.

FITZHENRY, Circuit Judge, dissenting.

W. Paul Stratton, of Sullivan, Ind., for appellant.

C. Severin Buschmann, of Indianapolis, Ind., for appellee.

Before FITZHENRY, ALSCHULER, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge.

The receiver appeals from an order of the District Court allowing appellee a preferred claim against the assets of the Peoples National Bank & Trust Company of Sullivan, Ind., which, until the closing of its doors on June 27, 1932, was doing a general banking business under the National Bank Act.

The court made findings of fact to the effect that on May 27, 1932, the Peoples Bank gave appellee, a broker with principal office at Indianapolis, an order for certain Indiana road bonds, whereupon appellee confirmed the order by mailing to the Peoples Bank an invoice of the bonds; that on June 9, 1932, appellee delivered the bonds to the Indiana National Bank of Indianapolis, together with a draft drawn by appellee on the Peoples Bank in favor of the Indianapolis Bank for $2,769.97, the sale price of the bonds with interest, and attached also a duplicate original invoice of sale of the bonds, with instructions to the Indianapolis Bank to collect the draft and deliver the bonds to the Peoples Bank upon payment of the draft; that the invoices provided on their face that title to the bonds should remain in appellee until full payment thereof, in cash or solvent credits, had been received by appellee, and that this represented the agreement of the parties with respect to retention of title by appellee; that the bonds, invoice, and draft were received by the Peoples Bank June 10, 1932, and remained in its possession until June 24, 1932, on which date the Peoples Bank forwarded to the Indianapolis Bank a draft on the Federal Reserve Bank of St. Louis for $2,772.14 in payment of the draft drawn by appellee on the Peoples Bank; that the draft on the Federal Reserve Bank was indorsed by the Indianapolis Bank and forwarded for acceptance and payment to the Federal Reserve Bank, but by reason of the closing of the Peoples Bank on June 27 the draft was dishonored by the Federal Reserve Bank; and that the Peoples Bank

failed to pay for said bonds, and therefore never obtained title thereto.

The court further found that one Bledsoe had placed an order with the Peoples Bank to purchase for him certain Indiana road bonds, and that on May 5, 1932, and on a number of days thereafter, Bledsoe left with the Peoples Bank certain bonds for conversion into cash and investment in the road bonds he had ordered—the largest amount of such bonds, $2,325, having been left on May 16, 1932, which, a few days thereafter, the Peoples Bank converted into cash and placed to the credit of Bledsoe —the total amount realized by the Peoples Bank on Bledsoe's bonds being $2,785.51, all of which the Peoples Bank placed to Bledsoe's credit; that Bledsoe did not carry a checking or savings account in the Peoples Bank, but that for convenience, and at the request of the bank, he gave his check to the bank on June 24, 1932, for $2,774.91 in payment for the bonds which had been sold by appellee to the Peoples Bank, and at the same time the Peoples Bank gave to Bledsoe a check for $10.60 to pay balance of the funds which it had realized for Bledsoe's securities; that on May 5, 1932, and each day thereafter until the time of the closing of the bank, there was cash in the Peoples Bank far in excess of $50,-000; that the Peoples Bank never paid for appellee's bonds; and that, as between appellee and the Peoples Bank, the title remained in appellee, and that the Peoples Bank was not authorized to deliver the bonds to Bledsoe because it had not paid for the bonds as provided in the agreement of purchase.

As conclusions of law the court found that the title to the bonds remains in appellee as against the Peoples Bank and its receiver; that, upon delivering the bonds to Bledsoe, the Peoples Bank became a constructive trustee of the sum of $2,772.14, which was held by the Peoples Bank in trust, and that the assets of the bank are charged with a trust for that amount in favor of appellee; that the receiver of the Peoples Bank is a constructive trustee for such amount, and that the assets in his hands are impressed with a trust for such amount in appellee's favor; and that appellee recover such amount.

The decree follows the conclusions of law.

The case, in most of its salient features, is strikingly parallel with that of Kenneth V. Brownell, as Receiver of Peoples National Bank & Trust Co. of Sullivan, Indiana, v. John E. Turman, 75 F.(2d) 913, decided by this court March 12, 1935. On May 14, 1932, Turman delivered to the same bank for collection certain matured bonds, with the agreement that the principal collected should not be credited to his checking account, but held by the bank for reinvestment in Indiana road bonds. The bonds delivered were promptly collected, but, unknown to Turman, the bank credited his account with the amount, though no entry was made on his passbook until after the bank's closing on June 27, 1932. Before the proceeds were invested as directed, the bank failed, and Turman claimed preference in its assets on the theory of a trust in his favor. The District Court found and decreed that there was a trust in his favor for the amount realized by the bank on his bonds. We quote a paragraph from the opinion of this court in the Turman Case: "It is quite probable that the District Court and appellee were misled, as well they might have been, with respect to the continuance of the trust relationship after the collection of the bonds by the Fletcher Bank, by reason of this court's decision in Adams v. Champion, 70 F.(2d) 956, and National Bank of America v. United States Fidelity & Guaranty Co., 71 F.(2d) 618, but since the filing of appellant's brief, those decisions were reversed by the Supreme Court in two decisions rendered on February 4, 1935 [55 S. Ct. 399, 79 L. Ed. ——; Jennings v. U. S. Fid. & Guaranty Co., 55 S. Ct. 394, 79 L. Ed. ——]."

The opinions of the Supreme Court in the cases cited in the paragraph, as well as in the case of Old Company's Lehigh v. Henry E. Meeker, 55 S. Ct. 392, 79 L. Ed. ——, decided by that court on the same day, have brought about necessary modification of the rule respecting such alleged trusts as was applied by us in deciding the appeals in Adams v. Champion, supra, and National Bank of America v. United States Fidelity & Guaranty Co., supra. In appellee's brief here, and on the oral argument, much reliance had been placed upon the opinions of this court in the Adams and National Bank Cases.

It had been appellee's contention, and thereon the findings and decree of the District Court were predicated, that Bledsoe's funds in the bank realized from sale of his securities were segregated to a specific purpose, and that if the bank diverted them

a trust in favor of Bledsoe arose in the assets of the bank, to which trust appellee succeeded or was subrogated through its bonds being turned over to Bledsoe by the Peoples Bank.

Upon the handing down of the opinions of the Supreme Court in the three cases, and in view thereof, further suggestions were requested from counsel for the parties herein, in response to which a supplemental brief for appellee was filed, wherein it is stated: "The effect of the decision of the Supreme Court in the case of Jennings, Receiver, v. United States Fidelity & Guaranty Co., in holding that the bank collection code is inapplicable to national banks, is to give Bledsoe merely a general claim in so far as the appellee relied on the bank collection code to establish a preference."

Thus, and quite properly, appellee abandons the contention that through Bledsoe a trust in favor of appellee accrued in the assets of the failed bank.

Appellee now presses the contention that, wholly apart from the relation of Bledsoe to the transaction, appellee is entitle to prevail because the Peoples Bank, contrary to the indorsement on the invoices reserving title unto appellee until the bonds are paid for, sold the bonds and converted the proceeds, and that thereby the Peoples Bank became a trustee ex maleficio for appellee.

We do not find in this record the elements essential to the creation of a trust ex maleficio. There is nothing that suggests conduct on the part of the Peoples Bank other than might reasonably have been expected in the exercise of good faith. Undoubtedly the reasonable anticipation was that the bonds were acquired to fill an order of some customer of the bank, and, when the transfer to its customer was consummated, the bank, in the ordinary course of banking, would draw its draft in payment and mail it to appellee's agent, the Indianapolis Bank. The delay between the Peoples Bank's receiving the bonds from appellee and mailing the draft in payment was evidently within the anticipation and with the apparent approval of appellee and its agent, since no complaint or protest against such delay was made. What was done in the way of receiving and disposing of the bonds and remitting therefor was, so far as anything to the contrary appears, in the usual course of banking and in good faith. The fact that the bank closed its doors before its draft sent in payment had cleared would not of itself indicate fraudulent or unfair conduct of the bank. It is not the experience that banks which fail suspend their business long enough before closing their doors for their outstanding paper to clear. Doubtless in practically all bank failures the bank has some such outstanding paper when it suspends. If it followed that the issuance of its paper so shortly before failure manifested of itself a fraudulent purpose on the part of the bank, there would be few, if any, instances where preferences would not accrue in favor of the holders of such dishonored paper. Under the rule, as defined by the Supreme Court in Jennings v. United States Fidelity & Guaranty Co., supra, we are of the view that the evidence here does not establish a trust ex maleficio.

But at the threshold there is the question whether the evidence warrants the conclusion that there was in fact upon the face of these invoices purported reservation of title in appellee as the court found. If the evidence on the proposition were contradictory, it would likely be concluded that the determination of the court which saw and heard the witnesses would not be disturbed. There is here no contradiction of evidence, but a question whether the sustaining evidence sufficiently establishes the fact as the court found it to be.

It appears that appellee employed printed forms for making invoices of securities which it sells. These forms did not have printed thereon the reservation of title, but, when this was desired, it was effected by means of rubber stamp wherewith the indorsement was stamped on the invoice. Appellee's clerk testified that it was customary with them to stamp the reservation upon such invoices, that she usually did it, and that she presumed and believed it was on these invoices which were sent to the Peoples Bank, but that she had no personal recollection on the subject. No one testified to any such personal recollection or to having actually seen the reservation clause on any of these invoices. It appears that neither of the two invoices which were sent to the Peoples Bank could be found. It was testified that one of these invoices would customarily have been returned to the forwarding bank (in this case the Indianapolis Bank); but the Indianapolis Bank, wherein appellee did its banking,

could not find it, nor could any such be found in the files and papers of the Peoples Bank. Beyond this the record affords no evidence whatever to support the alleged reservation of title.

Some facts appeared tending in some measure to negative the contention. Appellee customarily made a number of copies of such invoices, retaining some of them for its own records. The copy offered in evidence showed the stamped indorsement, but it was explained for appellee that it was stamped on afterwards to make it like the original was assumed to be, and that the indorsement was not customarily stamped on the retained copies. Just why this important part of the contract should have been omitted from the retained copies, if it was upon the originals, is not readily apparent. Again, if it was the invariable custom to place this indorsement upon such original invoices, no reason appears why it should not have been printed thereon. The inference suggests itself that if a rubber stamp was used for this indorsement, it is because in some cases it was, and in others was not, used. This militates somewhat against the evidence of appellee's employee to the effect that the stamp was generally used.

Then there is the undisputed fact that, to appellee's knowledge, its agent, the Indianapolis Bank, through which the draft, with bonds attached, was drawn, delivered the bonds to the drawee of the draft without requiring payment to be made, whereby the protection which in general attends the process of drawing a draft with documents attached was entirely omitted. To appellee's knowledge, the bonds were delivered to the drawee of the draft without requiring payment to be made; and, with appellee's knowledge and without protest or objection, or without any undertaking to repossess the bonds, they remained two weeks in possession of the Peoples Bank before they were sold to Bledsoe.

We are inclined to the view that the act of delivering the bonds to this bank without first requiring payment, and of suffering it to hold them for this length of time without taking any action whatever for repossessing them, tends to indicate either that the reservation clause was not on the invoices, or, if there, was waived, and the credit of the Peoples Bank alone accepted and relied upon. But, apart from these negative circumstances, we are of the view that, considering only the affirmative evidence, it falls much short of justifying a finding by the court that the reservation clause was on these invoices.

The decree of the District Court is reversed with direction to dismiss the bill of complaint.

FITZHENRY, Circuit Judge, dissents.