**ALLIED MILLS, Inc., v. HORTON.**

No. 4927.

Circuit Court of Appeals, Seventh Circuit.

June 24, 1933.

Frank T. Miller, John M. Elliott, Eugene R. Johnson, and John D. Thomason, all of Peoria, Ill., for appellant.

Roy C. Martin, of Benton, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The District Court dismissed appellant's bill for want of equity. The facts as charged, stipulated, and found are:

Allied Mills, on November 24, 1930, drew its sight draft, through the First National Bank of Benton, Ill., on one Crisp for $699.-82, attaching thereto a bill of lading for merchandise which Allied Mills had sold Crisp. On the face of the draft was printed:

"Collecting Bank Notice.

"This draft is a cash item and is not to be treated as a deposit. The funds obtained through its collection are to be accounted for to us and are not to be commingled with the other funds of collecting bank.

"Surrender original B.L. attached hereto only on payment of this draft.

"If acceptance or payment is refused, telegraph us immediately and hold for instruction."

The draft was forwarded to the First National Bank, which received it November 26. On the forenoon of the 26th Crisp made collections from his customers and deposited in the bank $346.20, of which $105 was cash and the balance in checks upon the customers' sufficient accounts there. These deposits increased Crisp's account there sufficiently to meet that draft and another sight draft on him for about $150 which was also then in the bank for collection.

About the middle of the afternoon the bank notified Crisp that the draft for $699.82 had arrived, and thereupon Crisp went to the bank and there gave his check for $851.62 upon his account to pay both drafts. The bank thereupon stamped both sight drafts "paid," and delivered them to Crisp with the bill of lading, and also stamped "paid" Crisp's check upon the bank and debited his account therewith. Thereupon the bank drew its draft upon a St. Louis bank for the amount of appellant's sight draft and sent it to Allied Mills, by whom it was deposited in its bank, which forwarded it for payment. It reached the Benton bank November 28 and payment was refused, the bank having, on the morning of the 28th, failed to open. The day intervening between the 26th and the 28th was Thanksgiving Day, a legal bank holiday. Appellee, as receiver, took possession of the bank and its assets.

The theory of the bill is that the bank became trustee for Allied Mills in the amount the bank received on the draft. It is appellant's contention that the printed instructions constituted a contract between appellant and the bank; that if the bank did not wish to be bound by the instructions it should have returned the draft instead of collecting it; that since the instructions specify that the collection, when made, shall be treated as cash, and since equity regards as done that which ought to have been done, the proceeds of the draft should be treated as cash then coming into the bank.

We cannot see where, in such a case, the printed notice materially changed the relations of the parties from what they would have been without it. The instructions do not contemplate that upon payment of the draft the amount of it should be treated as bailment, and set apart as the specific property

of the drawer of the draft. If each time such a draft is collected the collecting bank under such notice is required to place the specific funds received in a safe deposit box or in a package for the drawer, the transaction of business through drafts with documents attached would be quite revolutionized. In order to remit in the custom and manner of banks—by their own checks or by drafts on correspondent banks—the collecting bank must take over the funds collected to provide the means for meeting its check or draft employed for remitting the collection.

After collection of the draft the usual course was here followed—and of this no complaint is made—of sending to the drawer the bank's draft upon its St. Louis correspondent bank for the amount of the collection. If, when the bank's draft in favor of appellant was presented, it had been paid, the payment would have been out of the bank's funds. Whether or not the printed instructions on the draft were precisely followed, we do not understand that in either case the mechanics of remitting the proceeds of the collection would have been different from what they were.

In the case of Larabee Flour Mills Co. v. First Nat. Bank of Dublin et al., 52 F.(2d) 146, 148 (D. C.), the printed instructions on the draft were in all respects like those here, except that they did not have the clause "surrender original B.L. attached hereto only on payment of this draft." It was held that "the stipulation on the face of the draft * * * is immaterial," and that the bank was but the agent for the drawer. Surely the clause there omitted added nothing to what otherwise would have been the bank's plain duty. If documents attached to a sight draft might with impunity be delivered to the drawee by the collecting bank without payment of the draft, there would be no purpose whatever in the practice of so forwarding them. That there shall be no delivery without payment of the draft is of the very essence of such a transaction. The clause would neither add to nor take from the duties and liabilities of the several parties.

When appellant received the sight draft on the St. Louis bank and deposited it for collection, it did not assert or insist upon whatever, if any, advantage to itself the printed notice might have given, but deposited the draft, well knowing that if and when paid it would be out of the general funds of the Benton bank.

It is a rule of general application in federal courts that where checks on the collecting bank are deposited in the same bank to meet a draft which the bank holds for collection, no trust in the funds thus deposited arises in favor of the drawer of the draft. Hirning v. Federal Reserve Bank (C. C. A. 8) 52 F.(2d) 382, 82 A. L. R. 297 change position of C. C. A. 8 to conform to other citations; Larabee Flour Mills Co. v. First National Bank of Dublin et al., 52 F.(2d) 146 (D. C.); Larabee Flour Mills v. First National Bank of Henryetta, Okla., 13 F.(2d) 330 (C. C. A. 8); Empire State Surety Co. v. Carroll County et al., 194 F. 593 (C. C. A. 8). The reason generally assigned in the cases is that in such transactions there is no augmentation of the assets of the bank. There is merely a transfer of existing assets of the bank from one to another.

If Crisp had brought into the bank the cash wherewith to pay this draft and had paid it in for that specific purpose, the assets of the bank would have been augmented by the cash thus brought in, and a trust might then arise in favor of the drawer of the draft in case the bank fails to pay, and the funds coming into the bank are traceable.

Appellant insists that what was here done was equivalent to Crisp's drawing the cash out of the bank and paying it in again to meet the draft, and points out the incongruity in supporting a trust where the cash is checked out of the bank and at once paid to the bank to take up the draft, but denying it where the drawee gives a check upon the bank to pay the draft and the bank accepts it in payment and delivers the draft and bill of lading. While the contention may have the merit of plausibility, nevertheless there must somewhere be a line of demarcation between what does and what does not augment the bank's funds to constitute a trust. The nearer the facts approach that line the greater the incongruity may seem in whatever decision is reached.

The fact that a considerable part of the funds wherewith the drafts were paid was deposited in the bank on the very day the draft arrived and was paid, is not material. Had the funds been on deposit in Crisp's account for weeks or months the incongruity would not appear. Whether the interval is a matter of minutes or of weeks, the fact is that the funds were on deposit in the bank when Crisp drew his check in payment of the draft and received the bill of lading, and the relation of debtor and creditor then actually existed between them.

Through the transaction the bank received nothing. Crisp's check depleted his own ac-

count in the bank, and the bank's liability for the same amount to the drawer of the draft at once attached. No cash came to the bank. Nothing was taken from or added to its assets.

It is insisted that in any case the $105 of cash which Crisp deposited that day augmented the bank's assets by so much and should be held to constitute a trust. The instant this deposit was made the bank became debtor to Crisp, and the deposit became part of the bank's general assets. The fact that Crisp intended to use it to take up these sight drafts is immaterial. It may be presumed that one's checking account in a bank is intended sooner or later to be devoted to the uses of the depositor. This does not constitute such deposit a trust fund either for the benefit of the depositor or for such person or persons for whose use or benefit the depositor may intend to devote the account.

By amendment to the bill a theory of recovery was injected into the case based on the allegation that at the time the check was given to pay the sight drafts the bank was insolvent and known by its officers to be so. No evidence on this subject appears in the record beyond the fact that the bank did not open on the next banking day following its collection of the sight drafts. Brevity of time between these events is not alone sufficient to show the insolvency of the bank and scienter of its officers. When a bank ceases to function some transaction must be the last before it closes. This alone cannot give it a standing more favorable than that of previous transactions. The record does not support the allegations as to insolvency.

We are of the view that the transaction shows no augmentation of the bank's assets, and that the record discloses no trust relation.

The decree of the District Court is affirmed.