REPUBLIC SUPPLY CO. OF CALIFORNIA v. RICHFIELD OIL CO. OF CALIFORNIA.

SECURITY FIRST NAT. BANK OF LOS ANGELES et al. v. UNIVERSAL CONSOL. OIL CO.

No. 7812.

Circuit Court of Appeals, Ninth Circuit.

Sept. 9, 1935.

376

Harry J. Bauer, Alexander Macdonald, Henry R. Schultheis, Fred E. Pettit, Jr., and A. S. Halsted, Jr., all of Los Angeles, Cal., for appellants Armsby and others.

H. W. O'Melveny, Walter K. Tuller, Louis W. Myers, Harry L. Dunn, and Pierce Works, all of Los Angeles, Cal., for appellant Security Bank.

A. L. Weil and Le Roy M. Edwards, both of Los Angeles, Cal. (Martin J. Weil, of Los Angeles, Cal., of counsel), for cross-appellant Universal Oil Co.

David R. Faries, of Los Angeles, Cal. (Don F. Tyler and Leonard S. Janofsky, both of Los Angeles, Cal., of counsel), amicus curiæ on behalf of Universal Consol. Oil Co.

Before WILBUR and MATHEWS, Circuit Judges, and ST. SURE, District Judge.

ST. SURE, District Judge.

From a decree of the District Court, adopting and confirming findings and conclusions of a special master concerning a claim of Universal Consolidated Oil Company (hereinafter called Universal) against the receiver of the Richfield Oil Company of California (hereinafter called Richfield) and the Security First National Bank of Los Angeles (hereinafter called the bank) appeal and cross-appeal have been prosecuted.

At the time of the commencement of this proceeding Richfield was in equitable receivership. Universal filed a bill in intervention against the receiver and the bank, as trustee under a mortgage and trust indenture of Richfield, whereby it was sought to establish a prior lien upon certain assets of Richfield then in the hands of its receiver. The gist of the bill was that Richfield, with knowledge that Universal had a cash balance in bank amounting to $1,625,000, deliberately purchased sufficient Universal stock to procure control of Universal through the election of Richfield officers and attaches to the board of directors of Universal; misappropriated the amount named and commingled same with Richfield's general checking account in the bank; and thereafter invested the funds in certain assets which had passed into the hands of Richfield's receiver. The prayer was for a prior and superior lien upon the properties purchased in favor of Universal and against the bank and the receiver.

The matter was referred to a special master, who sustained the allegations of the bill in intervention, found that Universal had successfully traced part of its funds into specific properties which passed into the hands of the receiver, and that Universal was entitled to prior liens upon those designated parcels in the sum of $403,993.92. A general claim for the balance of $779,154.31, which the master found had not been properly traced, was allowed Universal.

The proceeding was instituted, and the master and District Court rested their conclusion upon the theory that recovery was limited to the lowest balance reached by

the commingled account between the dates of misappropriations and the dates of acquisition of the specified pieces of property.

The question on appeal is whether a trust may be declared upon the low balance theory.

Preliminarily, it is admitted by appellants that Universal's funds were misappropriated, and that the misappropriations constituted Richfield's receiver the trustee of a constructive trust of which Universal was the beneficiary.

Appellants urge that the evidence is insufficient to show a tracing of trust funds, and argue that in order to recover trust funds the injured cestui que trust must prove that "actual trust funds, as distinguished from a presumptive substitute therefor, were employed in the purchase of specific property;" in fewer words, that unless the trust funds are clearly traced into money, plaintiff must fail.

That strict rule has long since been supplanted by a more liberal one, modern only in the sense of its being a logical extension of an equitable principle underlying the idea of trusts, which has been evolved by courts of equity in order to obviate serious injustice—if not penalties —upon the innocent cestui que trust in his efforts to recover that to which he may be, on the merits, rightfully entitled. It is established beyond debate that no change of form can divest a trust fund of its trust character, and that the cestui may follow and reclaim his funds so long as he is able to trace and identify them, not as his original dollars or necessarily as any dollars, but through and into any form into which his dollars may have been converted. Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696; Board of Commissioners of Crawford County v. Strawn (C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100; In re Acheson Co. (C. C. A.) 170 F. 427; Brennan v. Tillinghast (C. C. A.) 201 F. 609; Equitable Trust Co. v. Connecticut Brass & Mfg. Corp. (C. C. A.) 10 F.(2d) 913; Kemp v. Elmer Co. (D. C.) 56 F.(2d) 657; St. Augustine Paint Co. v. McNair (D. C.) 59 F.(2d) 755. The underlying principle of this rule is that the cestui que trust has been wrongfully deprived of that which belongs to him; that his right to his funds has not been lost or destroyed by the misappropriation;

and that if, and to the extent, the cestui is able to follow and identify the amount of the misappropriated funds as having been used in the acquisition of other property, he may recover.

The presumptive substitute referred to in appellant's argument apparently originated in Knatchbull v. Hallett (In re Hallett's Estate), 13 Ch. Div. 696, wherein it was held that where one in a fiduciary capacity mingles money belonging to another with his own, the whole will be treated as trust property except so far as the tort-feasor may be able to distinguish his own funds. This rule was enlarged later in Re Oatway (Hertslet v. Oatway), [1903] 2 Ch. Div. 356. In that case Oatway, acting in a fiduciary capacity, deposited funds belonging to his cestui in his personal bank account, and from the blended account purchased shares of stock in the Oceana Company. Subsequently the blended account was dissipated. At page 360 of [1903] 2 Ch. Div., Joyce, J., said: "It is, in my opinion, equally clear that when any of the money drawn out has been invested, and the investment remains in the name or under the control of the trustee, the rest of the balance having been afterwards dissipated by him, he cannot maintain that the investment which remains represents his own money alone, and that what has been spent and can no longer be traced and recovered was the money belonging to the trust. In other words, * * * in order to determine to whom any remaining balance on any investment that may have been paid for out of the account ought to be deemed to belong, the trustee must be debited with all the sums that have been withdrawn and applied to his own use so as to be no longer recoverable, and the trust money in like manner debited with any sums taken out and duly invested in the names of the proper trustees. The order of priority in which the various withdrawals and investments may have been respectively made is wholly immaterial."

Upon a showing that at the time of the purchase of the Oceana stock the commingled account had a balance in excess of the amount claimed as a trust fund, it was argued that the trustee should be permitted to retain the stock because the excess could have been used to purchase the stock. The judge emphatically refuted that argument by holding that the tort-

feasor never was entitled to withdraw the trust funds from the account and hold them with the investment made therewith free of the charge in favor of the trust, unless and until the trust money had been restored, which never was done.

The contention of appellant in the instant case that the rule laid down in the Oatway Case has never been followed in our federal courts is not sustained by the authorities. Brennan v. Tillinghast, supra; Primeau v. Granfield (C. C.) 184 F. 480; In re Pacat Finance Corporation (C. C. A.) 27 F.(2d) 810, 813; Fiman v. State of South Dakota (C. C. A.) 29 F.(2d) 776, certiorari denied 279 U. S. 841, 49 S. Ct. 254, 73 L. Ed. 987. See, also, 82 A. L. R. 160. Nor is any distinction to be made, as argued by appellant, between those cases wherein the trust funds remained money (Brennan v. Tillinghast, supra, and In re Pacat Finance Corporation, supra), and those in which the trust funds had been changed into property.

No useful purpose would be served by reciting the facts and reasoning in detail in each of the cases just above cited. It is sufficient to say that in Brennan v. Tillinghast, supra, the Court of Appeals of the Sixth Circuit analyzed, discussed, and followed the rule of the Oatway Case, since which it has been a guide in subsequent litigation with relation to the presumption referred to in tracing funds. In the Brennan Case it was held that where a wrongdoer mingles another's money with his own, from which commingled account withdrawals are from time to time made, there is a presumption of law that the sums first withdrawn were moneys belonging to the tort-feasor which he had a right to expend, and that which remained included the trust fund which he had no right to use; but that the presumption could not stand against evidence to the contrary, citing Board of Commissioners of Crawford County v. Strawn, supra. It was further held that where the evidence showed that the first moneys withdrawn from the blended account by the tort-feasor were not in fact dissipated, but were merely transferred in another form of property to another fund retained by the tort-feasor, the presumption had no application; that under such evidence a trust attaches to the substituted form in which the money is retained, and that the right to follow the trust fund in such form is not lost by reason

of the fact that the tort-feasor thereafter withdraws and spends for his own purposes the balance of the fund in which the trust money was originally mingled, citing In re Oatway.

In Re Pacat Finance Corporation, supra, the Court of Appeals of the Second Circuit held that while the trust money in that case could not be literally traced in life credits, "the applicable principle is that stated by Joyce, J., in Re Oatway."

A careful consideration of the authorities cited bearing upon the question involved, leads us to the conclusion that when Universal proved with precision, as it did, the misappropriation of its funds, the commingling thereof in Richfield's account, the acquisition of certain properties between the dates of misappropriations and the exhaustion of the account, no intervening exhaustion of the account, and the intervening low balance, the exhaustion of the account prior to receivership and the passing of the designated acquired properties into the hands of the receiver, a strong prima facie showing of tracing was made [In re Hallett's Estate, supra; Empire State Surety Co. v. Carroll County (C. C. A.) 194 F. 593; Brennan v. Tillinghast, supra; Macy v. Roedenbeck (C. C. A.) 227 F. 346, L. R. A. 1916C, 12; American Surety Co. v. Jackson (C. C. A.) 24 F.(2d) 768], whereupon the burden of proof shifted, temporarily, to the defendants to establish, if they could, what amount, if any, of Richfield's funds contributed to the purchase of the properties specified. Central National Bank v. Connecticut Mutual Life Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Meyers v. Baylor University (Tex. Civ. App.) 6 S.W.(2d) 393; Smith v. Mottley (C. C. A.) 150 F. 266; Fiman v. State of South Dakota, supra. Defendant having failed to make any showing upon this point, we conclude that the impressment of the lien upon the entire mass of property was proper, in a sum not exceeding the smallest amount contained in the commingled fund subsequent to misappropriation. Brennan v. Tillinghast, supra.

We pass to a consideration of the question presented by the cross-appeal, that is, whether the master and the District Court pursued the correct method in determining the lowest intermediate balance.

In this connection it may be stated that David R. Faries, as amicus curiæ, filed a brief in behalf of Universal, arguing the case from the standpoint of the minority stockholders. He adopts the errors assigned by cross-appellant and also attacks the method followed in arriving at the amount of the liens.

In attaching the liens, the master had three alternatives or theories before him for computing the amounts thereof:

1. The daily closing balance, after crediting the opening balance and all deposits during the day and charging all withdrawals for the day, without regard to the order in point of time in which deposits and withdrawals were made.

2. The balance shown during the day as a result of periodical posting of deposits and withdrawals, after crediting the opening balance, with or without regard to the order in point of time of the transactions, observing or neglecting to observe the true balance, according to the arbitrary inclination of the posting clerk.

3. The balance shown by deducting all withdrawals posted during the day from the opening balance without crediting deposits for the day; disregarding the true order of transactions and assuming an order in point of time which would produce the lowest possible balance during the day.

The third alternative was used.

It is urged by Universal that the method followed limits its recovery to the lowest possible figure, and that the daily closing balances should have been the basis of recovery; if not that, at least the lowest daily intermediate posted balances.

No case to which we have been cited really answers the question before us, namely: How is the lowest intermediate balance to be determined? We must, therefore, reach our conclusion upon the basis of equity with due regard, however, to the well-established rules of law and known business practices.

■ If the lowest intermediate balance between the misappropriations and the purchases is to be taken literally, that is to say at any moment of any day, it is obvious that the order in which deposits and withdrawals were made would be indispensable to proof. None of the three alternatives pretend to show sequence of transactions. It is a matter of common knowledge and, indeed, of record, that the volume and complexity of business and banking practice do not permit of keeping an accurate momentary balance current with deposits and withdrawals in large commercial accounts, for the reason that banks have various departments and many tellers, and the credit and debit transactions react upon one another in rapid succession.

■ The evidence in this case establishes that the daily intermediate posted balances are merely working balances in the bank; that they do not necessarily represent the actual balance resulting from all transactions in the account up to the time of posting. They represent only the balance of the deposits and withdrawals actually posted, and whether all transactions up to the time of posting shall be included in the intermediate balance is left to the arbitrary inclination of the posting clerk. To illustrate, a check coming to the desk of the posting clerk at 8:15 a. m. from the clearing house may not be posted until after a deposit made at 2:30, notwithstanding the clerk may have posted the account one or more times in the meantime; or a check cashed at 11 o'clock may be posted ahead of one which came in at 8:15. Likewise, a deposit coming into the bank at the opening hour may not be posted until after the closing hour. "The chances are that it would not be posted until after three o'clock." (Master's report.) From this it is apparent that the intermediate posted balance theory was not reliable as showing the true state of the commingled account, and was, therefore, properly discarded.

■ We are not persuaded, however, that the method adopted by the master and the District Court is any more applicable, for it assumes an order of transactions which is wholly unsupported by evidence or reason, and disregards entirely a most essential element of any bank account, namely, credits. The adoption of this method was based upon the premise that the order in point of time of deposits and withdrawals was essential to proof, and that the burden was upon claimant; and upon the reasoning that claimant must fail unless there is a minimum situation which "assumes an order of deposits and withdrawals which, at the worst, must have occurred." We are not in accord with that view.

■ The evidence discloses that the bank itself, which handles both deposits

and withdrawals, and the bookkeeping of the account, cannot, in ordinary cases (and in this case did not), prove accurately the chronology of transactions in large commercial accounts. Why, then, should that insuperable burden penalize the cestui que trust whose funds have been wrongfully taken from it?

Notwithstanding the established doctrine that subsequent deposits in a commingled account such as the one herein does not restore a trust fund once exhausted (Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806; Board of Commissioners of Crawford County v. Strawn [C. C. A.] 157 F. 49, 15 L. R. A. [N. S.] 1100), and that the burden of proof is upon claimant to show that its funds purchased the property upon which it is sought to fasten a lien (Empire State Surety Co. v. Carroll County [C. C. A.] 194 F. 593, 604), under the facts in this case we are disinclined to follow either rule to the extent of defeating recovery, or even limiting recovery to the lowest possible figure, upon an unwarranted assumption of the chronology of transactions and a disregard of the credit side of the bank account. The facts disclosed by the record prompt the observation that if any assumption is to be indulged in, it should not favor Richfield or its creditors, for the reason that Universal's funds were surreptitiously abstracted and deposited in Richfield's account, out of which, the evidence shows, all of the properties involved were wholly or in part paid for, and the account was completely exhausted prior to receivership. From this it is apparent that Universal's claim is superior in right and in time to the creditors of Richfield. Under these circumstances, we know of no equitable principle which would entitle the creditors to equal or greater consideration than is due Universal.

No citation of authority is necessary to support the statement that the daily closing balance is the one which reflects the actual state of the ordinary commercial bank account, and is the only one accepted and used by both bank and customer in ordinary business transactions. For obvious reasons, heretofore adverted to, it disregards the chronological order of deposits and withdrawals. It does not, however, disregard any transaction on either side of the ledger.

It seems perfectly clear to us that under the prevailing system of bookkeeping in the bank the essential elements for determining the lowest intermediate balances are not ascertainable with accuracy until the close of the banking day, when all transactions for that day are posted. If in the interim between daily closing balances there was a transgression of the rule with reference to subsequent deposits not restoring trust funds once exhausted, and the balance did in fact fall below the amount of the trust funds then in the account, the burden was upon defendants to show that fact with accuracy. Under the evidence in the case before us, such liability as might have resulted therefrom should be borne by the tort-feasor, not the innocent cestui. Concisely stated, the equities not being equal, proof of the lowest daily closing balances between misappropriations and purchases of the identified properties constituted a prima facie showing of the lowest intermediate balances, which, for reasons already stated, was not overcome by defendants' evidence of daily intermediate posted balances.

It follows from what we have said that Universal is entitled to prior liens in the amounts and upon the properties shown in Schedules A and B respectively in the record, under the column headed Daily Closing Balances, which figures may be summarized as follows:

| | |
|---|---|
| Delaney Producing Property, | $150,000.00 |
| Rioco refinery storage tanks,.. | 183,287.57 |
| Watson refinery storage tanks, | 115,367.07 |
| 106,000 shares Universal stock, certificates LX 26, 27, 28, 32 | 199,500.00 |
| 5,100 shares Universal stock, certificate LX 31,.......... | 10,625.00 |
| Tanker Kekoskee,............ | 35,421.75 |
| Service station at Franklin and Vermont Streets, L. A., | 8,500.00 |
| Land, Sacramento distributing plant, ................... | 5,000.00 |
| Tankers Larry Doheny, Pat Doheny, and Richmond marine terminal,............. | 142,242.86 |
| | $849,864.25 |

This allowance reduces Universal's general claim to $333,283.98.

The order and decree appealed from to the extent that it impressed a trust upon all of the properties designated is affirmed. So much of the order and de-

cree as allowed liens on specific properties in the amounts determined by the method adopted by the master and District Court is modified as immediately above stated, and, as so modified, is affirmed.

The case is remanded to the District Court for further proceedings in accordance with the views herein expressed.