## SCULLY v. PACIFIC STATES SAVINGS & LOAN CO. et al.*

### No. 8143.

Circuit Court of Appeals, Ninth Circuit.

Feb. 23, 1937.

*Writ of certiorari denied 57 S.Ct. 937, 81 L.Ed. ——

Michael G. Luddy, of Los Angeles, Cal., for appellant.

John L. Mace, of Los Angeles, Cal., for appellee Pacific States Savings & Loan Co.

Thornton, Menzies & Penney and Thomas P. Menzies, all of Los Angeles, Cal., for appellees Hogan.

David R. Faries, McIntyre Faries, and Leonard S. Janofsky, all of Los Angeles, Cal., for appellees Moseley.

Before GARRECHT and MATHEWS, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

A trust has been impressed by decree of the trial court upon a part of the $50,648.44 deposited with the clerk of the District Court under interpleader on the part of the Security First National Bank, and reversal is sought.

The appellees claim to be beneficiaries of a portion of said fund which had been deposited in the First National Bank of Beverly Hills, hereinafter called "Beverly Bank," and by it transferred to its account in the Security First National Bank of Los Angeles, hereinafter called the "Security Bank." The trust, it is claimed, was created by the terms of agreements between appellees and the Beverly Bank. "Escrows" were opened by appellees in the escrow department of the Beverly Bank maintained as a portion of the trust department thereof. So far as material, the pertinent facts with respect to the claim of appellees Moseley are:

Two checks, one for $500 and one for $2,500, both checks drawn on another bank, with the following instructions: "You are instructed to clear these checks through the regular channels on May 11, 1932, and hold the $3,000.00 in your above numbered escrow until Escrow No. 10295-V in the First National Bank of Beverly Hills has been closed, at which time you are to pay the $3,000.00 to C. C. Moseley and Viola H. Moseley, his wife."

The instructions in regard to the Pacific States Savings & Loan Company, assignee of Lillian Culver, who originally opened the escrow, stated: "I hand you herewith the sum of $13,232.00 which you are authorized to pay to Pacific States Savings & Loan Company at the close of your above numbered escrow for the account of Thomas D. Donnelly and Catherine E. Connelly * * *."

Appellees Hogan's escrow instructions are:

"It is expressly understood between the party or parties signing these instructions that, in consideration of the First National Bank of Beverly Hills, Calif., acting as escrow holder hereunder, said bank is to be considered and held as a depository only * * * and that its duties hereunder shall be limited to the safekeeping of such money, instruments or other documents received by it as such escrow holder and for the delivery of the same in accordance with the written escrow instructions given to it in this escrow.

"If the escrow holder is unable to comply with these instructions by June 28th, 1932, by reason of the default of either seller or purchaser, the party not in default may, if he so elects, demand the return of the money and instruments placed by him in the escrow and the cancellation of the escrow.

"Should either the purchaser or seller * * * oppose the carrying out * * * of this escrow * * * then the First National Bank of Beverly Hills shall be entitled * * * to hold the money and instruments in escrow * * *."

[1] These checks were forwarded to the Security Bank for collection and were deposited by the Security Bank to the account of the Beverly Bank. It was con-

ceded at trial by the appellant receiver that none of these escrows relating to appellees' claims had been concluded at the time that the receiver took possession of the Beverly Bank. It is obvious that the escrow instructions on deposit of the checks created a continuing trust. Pottorff v. Key (C.C.A.) 67 F.(2d) 833; Wisdom v. Keen (C.C.A.) 69 F.(2d) 349; Schumacher v. Harriett (C.C.A.) 52 F.(2d) 817, 82 A.L.R. 1.

The issue here is clearly distinguished from Jennings, Receiver, v. United States Fidelity & Guaranty Co., 294 U.S. 216, 55 S.Ct. 394, 79 L.Ed. 869, 99 A.L.R. 1248. In this case special deposits were made "to hold the money" until certain conditions eventuated. In the Jennings Case, supra, a general deposit of commercial paper for collection was made with no instructions, and Justice Cardozo held that a person placing in a bank commercial paper for collection impliedly agrees that the business may be done according to well-known banking usages so far as permitting the collected money to be mingled with funds of the collecting bank, and also said (294 U.S. 216, at page 222, 55 S.Ct. 394, 397, 79 L.Ed. 869, 99 A.L.R. 1248): " * * * the doctrine of a continuing trust would charge the agent with a duty to set the proceeds of collection apart from other assets, and hold them intact for transmission to the forwarder." The cases cited by the appellant are beside the point in this case, and without distinguishing each case it may be said that, in those cases, collection was made by transmittal from the depository bank to the collecting bank, stating that each draft was endorsed for collection and credit, Washington Loan & Banking Co. v. Fourth National Bank (C.C.A.) 38 F.(2d) 772, or there was neither augmentation of the insolvent bank's assets, or the fund involved could not be traced due to certain overdrafts, and were not accompanied by written agreement with the trustee having relation to the terms of the agreement, and no trust was established. Brownell v. Turman (C.C.A.) 75 F.(2d) 913; Allied Mills v. Horton (C.C.A.) 65 F.(2d) 708, 90 A.L.R. 1. Nor has section 16c of the California Bank Act, St.Cal.1925, p. 513 (Massachusetts Rule), application in this case, for that act provides that the initial bank where the check is deposited for collection is not liable for default of any sort by its correspondent bank. In all of the cited cases no trust was intended to be created, no deposit made in harmony with any such intent, and there was failure to prove an augmentation of the assets of the closed bank. Nor is it the purpose or intent of this act to vary an express or implied contract. Exchange National Bank v. Third National Bank, 112 U.S. 276, 5 S.Ct. 141, 28 L.Ed. 722. The special "escrow" deposit and therewith instructions to clear the same through the regular channels must be considered together, and the lien on the special deposit was not divested but continued and did attach to the collected funds in the hands of the Security Bank (Jennings, Receiver, supra), since the money involved was traced to the fund.

The trust fund relationship and augmentation of the bank's funds, and tracing of the deposit having been shown in the balances of the Beverly Bank ledger with the Security Bank, its correspondent, the right thereto is established, unless it is shown by the appellant that the fund has been dissipated by intermediate withdrawals. The low daily ledger balance controls. The low balance is ascertained by the lowest daily closing ledger balance of the Beverly Bank reflected on the Security Bank's books to which the blended amounts have been reduced pending its currency. Republic Supply Company v. Richfield Oil Company, 79 F.(2d) 375 (C.C.A.9).

Where two methods of dealing are open, one honest and the other fraudulent, the law presumes the intent of the party is to pursue the honest course. Good conscience, promulgated through equity rule, marshals the withdrawals against the fiduciary's own funds, since the general creditors accepted the risk of the bank's solvency, while the cestuis que trustent accepted only the hazards of the honesty of its officers. Chase & Baker Co. v. Olmsted, 93 Wash. 306, 160 P. 952; In re Kountze Bros., 79 F.(2d) 98, 102 A.L.R. 367 (C.C.A.2), certiorari denied Irving Trust Co. v. City of Los Angeles, 296 U.S. 640, 56 S.Ct. 173, 80 L.Ed. 455; Central National Bank v. Connecticut Mutual Life Insurance Co., 104 U.S. 54, 26 L.Ed. 693; Cunningham v. Brown, 265 U.S. 1-12, 44 S.Ct. 424–426, 68 L.Ed. 873; Knatchbull v. Hallett, 13 Ch.Div. 696. Good conscience requires that this apply to the collected deposit as well as to the uncollected deposits which the bank was privileged to use without defrauding anyone and be deemed to have drawn against such funds rather than the funds held in trust.

The reaction of the credit balances and cash and the cash items in the rapid changes of present day banking make it practically impossible to distinguish between them. The term "available fund balance" it is shown is practically synonymous with "collected fund balance." The bank is presumed to have held sacred the trust fund, and if a cash item has augmented anything, it must have augmented the cash assets of the bank, and the cash assets of the bank now in custodia legis must be held charged with the trust.[1] "* * * the beneficial owner is entitled to the proceeds, whatever be their form, provided only he can identify them." Central National Bank v. Connecticut Mutual Life Insurance Co., supra, 104 U.S. 54, 68, 26 L.Ed. 693.

The ledger or book balance is the only record kept by the bank and is the only exposition of the daily closing balance and affords the only reflection of the account, and is the only evidence produced of the business transactions of the bank.

The cash items being shown to be in the trust fund, the lien must be impressed, unless appellant, who has the laboring oar, has shown a dissipation of the trust fund.[2]

Appellant seeks to show dissipation of the trust fund by a private memorandum alleged to have been kept by one of the officials of the bank, who was called as a witness, by which it was sought to show that at one time during the last day the bank was open the trust fund was exhausted, but at the close of the day the funds were augmented by more than enough to meet the cestuis que trust demands. This private memorandum is not evidence. It may not be received as evidence for any purpose. It is not contended that it was used to refresh the witness' recollection nor that it did refresh his recollection, and enable him to testify from memory and thus give to the court the credit balance at various times during the day. The kaleidoscopic, endless chain, moving picture changing of the cash items, and augmentation of available fund balances, which was practically synonymous with the collected fund balance, cannot in this way establish a fixed condition. The official testified the conclusion as his best judgment based as closely as may be on his experience would allow calculations to be made. The volume of business, it is stated, was well over 100,000 items per day. The daily intermediate posted balances could only include the deposits and withdrawals actually posted. What transactions were included in the intermediate balance up to the time of posting we do not know. The theory on which this memorandum was offered as evidence is unreliable. It is uncertain; it is speculative; it is purely guesswork at best, and the right of cestuis que trustent may not be defeated by so mythical a theory.

Affirmed.

[1] Schumacher v. Harriett (C.C.A.) 52 F.(2d) 817–820, 82 A.L.R. 1; Brennan v. Tillinghast (C.C.A.) 201 F. 609; Board of Commissioners v. Strawn (C.C.A.) 157 F. 49, 15 L.R.A.(N.S.) 1100; In re Byrne, 32 F.(2d) 189 (C.C.A. 2); Connolly v. Lang, 68 F.(2d) 199 (C.C.A. 7); Chase & Baker Co. v. Olmsted, 93 Wash. 306, 160 P. 952; Bank of America Nat. Trust & Sav. Ass'n v. California Sav. & Commercial Bank, 218 Cal. 261, 22 P.(2d) 704; Hudspeth v. Union Trust & Sav. Bank, 196 Iowa, 706, 195 N.W. 378, 31 A.L.R. 466, with note; Northwest Lumber Co. v. Scandinavian American Bank, 130 Wash. 33, 225 P. 825, 39 A.L.R. 922, with note; Corporation Commission of North Carolina v. Merchants' Bank, etc., Co., 194 N. C. 125, 138 S.E. 530, 57 A.L.R. 382, with note; Blythe v. Kujawa, 175 Minn. 88, 220 N.W. 168, 60 A.L.R. 330, with note.

[2] In re J. M. Acheson Co. (C.C.A.) 170 F. 427; American Surety Co. v. Jackson, 24 F.(2d) 768 (C.C.A. 9); Smith v. Mottley, 150 F. 266, 80 C.C.A. 154; Smith v. Township of Au Gres, 150 F. 257, 80 C.C. A. 145, 9 L.R.A.(N.S.) 876; Republic Supply Co. of California v. Richfield Oil Co. (C.C.A.) 79 F.(2d) 375; Empire State Surety Co. v. Carroll County (C. C.A.) 194 F. 593; Brennan v. Tillinghast (C.C.A.) 201 F. 609; Macy v. Roedenbeck (C.C.A.) 227 F. 346, L.R.A.1916C, 12; Central Nat. Bank v. Connecticut Mutual Life Ins. Co., 104 U.S. 54, 26 L. Ed. 693; Meyers v. Baylor University (Tex.Civ.App.) 6 S.W.(2d) 393; Fiman v. State of South Dakota (C.C.A.) 29 F.(2d) 776; Israel v. Woodruff, 299 F. 454, 457 (C.C.A. 2).