**In re Gary James PRESTON and Mary Ann Preston, d/b/a Preston Construction Company, Debtors.**

No. 185–01530.

United States Bankruptcy Court, C.D. Illinois.

July 24, 1987.

Gary T. Rafool, Peoria, Ill., for debtor.

Marie T. Reilly, Dean B. Rhoads, Sutkowski & Washkuhn Assoc., Peoria, Ill., for Jefferson Trust.

Gregg N. Grimsley, Vonachen, Lawless, Trager & Slevin, Peoria, Ill., for trustee.

Thomas L. Perkins, Kavanagh, Scully, Sudow, White & Frederick, P.C., Peoria, Ill., for William Feathers, et al.

## OPINION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

This matter came on to be heard on the Trustee's limited Motion for Summary Judgment. The Debtors owned and operated a construction business and had established a line of credit with the Brimfield Bank. As security for the line of credit, the Brimfield Bank took an assignment of the Debtors' right to payment from various construction contracts. The Brimfield Bank made several loans to the Debtors. Two of the loans were secured by separate assignments of the proceeds from the Debtors' Village Court contract (Village Court) and the Benningfield contract (Benningfield). The Brimfield Bank participated one of the two loans to the Yates City Bank. The Debtors' note for the participated loan was payable to the Brimfield Bank. The Brimfield Bank then issued its participation certificate to the Yates City Bank which acknowledged the latter bank had an interest in the loan, but provided the Debtors' note would remain in the custody of the Brimfield Bank, the Brimfield Bank would service the loan, and the Brimfield Bank had the sole discretion with respect to exercising, or refraining from exercising, any rights with respect to the loan.

Through the use of false mechanic's lien affidavits, the Debtors received payments of $75,000.00 from Village Court and $106,250.00 from Benningfield. The payments were in the form of checks payable to the Debtors, the Brimfield Bank, and Village Court and Benningfield respectively. On April 19, 1985, the Debtors' general bank account at the Brimfield Bank had a balance of approximately $7500.00. On that date the two checks were deposited in the general bank account. Immediately thereafter, the Bank withdrew $165,000.00 from the general bank account to repay the loans secured by the Village Court and Benningfield assignments. Of the $165,000.00, the Brimfield Bank kept $21,000.00 as repayment for the loan it held and paid $144,000.00 to the Yates City Bank as repayment for the participating loan. After the withdrawal, the balance in the general bank account was approximately $24,000.00. This balance was subsequently used by the Debtors to pay other obligations which depleted the general bank account.

The Debtors filed a Chapter 7 proceeding. The trustee initiated a preference action against the Brimfield Bank to recover the $165,000.00, which was settled for $106,000.00. The settlement monies came from the Brimfield Bank's "loan loss reserve" account which is funded from profits of the Brimfield Bank. In response to the Trustee's application for approval of the settlement, subcontractors with valid mechanic's liens claimed a constructive trust on the $106,000.00. The owner of Benningfield also claimed a constructive trust on the $106,000.00. Mechanic's liens on Village Court total $53,000.00. Known mechanic's liens on Benningfield total $67,000.00. Possible mechanic's liens on Ben-

ningfield could reach $250,000.00. So actual and potential mechanic's liens on both Village Court and Benningfield could total $303,000.00.

Believing that the key issue associated with the claims for a constructive trust is whether the mechanic's lien claimants and the Benningfield owner could trace the payments from their source through the Trustee's recovery, the Trustee filed a limited Motion for Summary Judgment seeking a ruling on the tracing issue. The Trustee contends the funds cannot be traced. The mechanic's lien claimants and the Benningfield owner contend they can. The Trustee also contends that even if the funds can be traced, the mechanic's lien claimants and the Benningfield owner could not have recovered the funds from the Brimfield Bank, and the Trustee, pursuant to Section 551 of the Bankruptcy Code, subrogates to the rights of the Brimfield Bank which prevents the mechanic's lien claimants and Benningfield owner from recovering the funds from the Trustee. This Court holds the funds can be traced but that a constructive trust may not be imposed upon a bona fide transferee and if the Brimfield Bank falls into that category, the Trustee would subrogate to the rights of the Brimfield Bank pursuant to Section 551 of the Code.

■ The reason why the tracing requirement is the most prominent feature in establishing a constructive trust is obvious. A defrauded creditor is not given any priority over other creditors in a debtor's bankruptcy proceeding as to the bankrupt's general assets. *In re Vichele Tops, Inc.,* 62 B.R. 788 (Bkrtcy.E.D.N.Y.1986). Conversely, a defrauded person through the declaring of a constructive trust can reclaim his property from the debtor subsequent to the filing of bankruptcy because the Bankruptcy Code does not authorize a trustee to distribute other people's property among the debtor's creditors. *In re General Coffee Corp.,* 64 B.R. 702 (S.D.Fla.1986). The defrauded creditor may trace his property through any number of transactions or changes to form. *In re Vichele Tops, Inc., supra; Republic Supply Co. of California*

*v. Richfield Oil Co.,* 79 F.2d 375 (9th Cir. 1935). In the latter case, the court stated:

"It is established beyond debate that no change of form can divest a trust fund of its trust character, and that the cestui may follow and reclaim his funds so long as he is able to trace and identify them, not as his original dollars or necessarily as any dollars, but through and into any form into which his dollars may have been converted. ... The underlying principle of this rule is that the cestui que trust has been wrongfully deprived of that which belongs to him; that his right to his funds has not been lost or destroyed by the misappropriation; and that if, and to the extent, the cestui is able to follow and identify the amount of the misappropriated funds as having been used in the acquisition of other property he may recover." (citations omitted).

In the case before this Court it is clear that the mechanic's lien claimants and the Benningfield owner were wrongfully deprived of what belonged to them. Had the Debtors not used false affidavits, $181,250.00 would have been paid to mechanic's lien claimants. If those funds can be traced, it would be grossly unfair and inequitable to use them to satisfy the claims of all the Debtors' unsecured creditors.

■ This Court now turns its attention to the specific points which the Trustee contends defeat the mechanic's lien claimants and Benningfield owner's attempts to trace. It is not disputed that the two checks were payable to the Debtors, the Brimfield Bank, and Village Court and Benningfield respectively, and the two checks were deposited in the Debtors' general account. The first point made by the Trustee is that the funds from Village Court and Benningfield were commingled when deposited into the Debtors' general bank account so that the mechanic's lien claimants in Village Court and the actual and potential mechanic's lien claimants in Benningfield, cannot trace the specific funds from each project. This Court recognizes that there could be a dispute between the mechanic's lien claimants in Village Court and the mechanic's lien claimants in Benning-

field. However, this Court does not believe that a dispute within a class of mechanic's lien claimants should be used to permit creditors outside of that class from obtaining the benefit of funds that are not otherwise available to them. If there is a dispute among the members of the mechanic's lien class, that dispute will have to be resolved at another time. It is altogether possible that the members of the class could settle their dispute, or absent a settlement, that this Court would resolve the dispute. Likewise, the fact that there are potential claims in Benningfield which have not been filed, is no reason to give the benefit of the funds to general unsecured creditors. Unknown claimants can be given an opportunity to file their claims and if they do so, all that has occurred is that the dispute within the mechanic's lien claimant class would have expanded in the context that there are more claims against the limited fund.

■ When the two checks were placed into the Debtors' general account, there was approximately $7500.00 already on deposit. The next point which the Trustee makes is that these funds on deposit became commingled with the newly deposited fund and it is not possible to determine which funds were used to pay the two bank loans and which funds were used to pay miscellaneous creditors. In this Court's view the newly deposited fund can be traced out of the general bank account because of the lending arrangement, the amount and timing of the withdrawal of the $165,000.00, and the nature of the other activity involving the account. It should first be noted that the lending arrangement between the Debtors and the Brimfield Bank was that the Brimfield Bank was taking a security interest in the proceeds from various contracts, and that it was anticipated that the funds from the various contracts would go into the general bank account and immediately be used to repay the loans secured thereby. This is evident from not only the agreement between the Debtors and the Brimfield Bank, but the manner in which the checks were payable— i.e. to the owners, the Brimfield Bank and the Debtors. As previously indicated, tim-

ing is also important. Immediately upon receiving the deposit of the two checks totaling $181,250.00, $165,000.00 was withdrawn by the Brimfield Bank and applied to the two notes that were the object of the preference settlement. Furthermore, it is noted that the $165,000.00 payment is less than the amount of the $181,250.00 deposit. No general assets of the Debtors were used to pay the $165,000.00 loan repayment. In fact, the reverse is true, a portion of the $181,250.00 deposit was used to pay unsecured creditors. Unsecured creditors were not damaged as there was more money in the general bank account after the transfers in and out of the account than there was before the transfer into it. Finally it is important to note that after the $181,250.00 deposit was made there was no other deposit made into the account, nor were there any withdrawals for any third party prior to the $165,000.00 withdrawal which would clutter the ability to trace the funds. Any withdrawal of the balance from the general account occurred after the $165,000.00 had been withdrawn.

■ There is no question that the funds received from the two contracts were used to repay the two loans which were the object of the preference suit. The funds came into the general bank account and $165,000.00 was used to repay note No. 9190 being held by the Brimfield Bank and note No. 9116 being held by the Brimfield Bank for the benefit of the Yates City Bank. The Trustee contends the funds cannot be traced to the settlement proceeds because (1) the $106,000.00 received from the Brimfield Bank came from the Bank's loan reserve account which consisted of commingled proceeds from various profitable loans and ventures of the Brimfield Bank, and (2) there was no tracing of funds back from the Yates City Bank.

This Court does not believe the source of the funds for the settlement destroyed the ability to trace. As is pointed out in *Republic Supply Co. of California v. Richfield Oil Co., supra,* the cestui does not have to trace and identify funds as his original dollars or necessarily as any dollars, but is entitled to recover if he can

trace his funds through and into any form into which his funds may have been converted. It is clear that the Brimfield Bank received the $165,000.00 and it is not required that the Bank repay the $106,000.00 with the same funds that it received initially. The fact that it repaid $106,000.00 from a loan loss reserve account which was created from various profitable loans and ventures of the Bank is no reason to deny the ability to trace. Where the actual funds came from to repay the preference is in a sense an internal accounting matter of the Bank. Likewise, the fact that $144,000.00 was paid to the Yates City Bank does not affect the ability to trace. For all intents and purposes the Brimfield Bank was the creditor, received the payment, and disgorged the preference. The notes ran to the Brimfield Bank, and the Brimfield Bank had complete control over the loan. The fact that the Brimfield Bank elected to participate one of the loans to the Yates City Bank was a matter between it and the Yates City Bank, and if the Brimfield Bank elected to resolve the preference without implicating the Yates City Bank, it was free to do so. It is noted that the Brimfield Bank repaid more in the way of a preference—i.e. $106,000.00 than it originally received the benefit of—i.e. $21,000.00. The Trustee cannot at one point claim that the Brimfield Bank received a preference while ignoring the Yates City's participation, and then at a subsequent point rely on Yates City participation to defeat the claim of the mechanic's lien claimants. It would not be equitable that the Trustee should ignore Yates City's participation in recovering the preference but rely on Yates City's participation to defeat the claim of the mechanic's lien claimants.

In conclusion, this Court would note that there are as many decisions on tracing as there are factual situations presented, and each case is decided on its own facts. The case before this Court can be distinguished from other cases where one group of creditors within a class is attempting to gain a priority over other creditors within the same class. For example, *In re Independent Clearing House Company*, 41 B.R. 985 (Bkrtcy.1984), *aff'd in part* and *rev'd*

*in part sub nom In re Universal Clearing House Co.*, 62 B.R. 118 (D.Utah 1986), is a case where some investors in the debtor's "Ponzi" scheme received repayment on their investment through investments by subsequent investors, and when the trustee sued the earlier investors to recover on the theory of preference the earlier investors contended there was a constructive trust of their original investment. In rejecting the constructive trust defense, the court pointed out that if the earlier investors were entitled to keep the repayment they would be doing so at the expense of other victims. The case before this Court can also be distinguished from those cases where the funds were deposited into the debtor's general account and the deposit was hopelessly lost because there were subsequent deposits and withdrawals of significant amounts at various times on numerous occasions which made tracing impossible. *See 4 Collier on Bankruptcy*, (15th ed. 1979).

The Trustee also takes the position that even if the funds can be traced, the mechanic's lien claimants and the Benningfield owner are not entitled to them, as the Brimfield Bank was a bona fide transferee of the funds and a constructive trust cannot be imposed on funds transferred to a bona fide transferee. The Trustee goes on to argue that pursuant to Section 551 of the Bankruptcy Code the Trustee is subrogated to the rights of a bona fide transferee.

Section 551 of the Bankruptcy Code (11 U.S.C. Section 551) provides in part as follows:

"Section 551. Automatic preservation of avoided transfer

Any transfer avoided under section ... 547 ... of this title, ... is preserved for the benefit of the estate but only with respect to property of the estate."

Where funds which would otherwise be subject to the imposition of a constructive trust are traced into the hands of a bona fide transferee, a constructive trust will not be imposed. *In re Williams Brothers Asphalt Paving Company*, 59 B.R. 71 (Bkrtcy.W.D.Mich.1986). The reason for

this result is set forth in *Scott on Trusts*, Section 304.1, p. 2456–57, where it is stated:

"It is held that where money is paid in satisfaction of an antecedent debt or other claim, the creditor is entitled to keep the money if he had no notice that it was subject to any equity. In a leading case in New York [*Stephens v. Board of Education*, 79 N.Y. 183, 187, 35 Am.Rep. 511 (1879)] the court said: 'It is absolutely necessary for practical business transactions that the payee of money in due course of business shall not be put upon inquiry at his peril as to the title of the payor. Money has no ear-mark.... [I]t is generally impractical to trace the source from which the possessor of money has derived it. It would introduce great confusion into commercial dealings if the creditor who receives money in payment of a debt is subject to the risk of accounting therefor to a third person who may be able to show that the debtor obtained it from him by felony or fraud. The law wisely, from considerations of public policy and convenience, and to give security and certainty to business transactions, adjudges that the possession of money vests the title in the holder as to third persons dealing with him and receiving it in due course of business and in good faith upon a valid consideration.' Similar considerations are applicable to negotiable instruments; to promote their marketability one who receives them in satisfaction of a debt takes free of equities of which he had no notice." *Scott on Trusts*, Section 304.1, p. 2456–57.

A factual issue has been raised as to whether the Brimfield Bank was a bona fide transferee. Therefore, this Court proceeds with this opinion on the assumption that the bank would fall into that classification.

■ The next determination for this Court is whether the Trustee, pursuant to Section 551, is subrogated to the rights of the Brimfield Bank so as to cut off the mechanic's lien claimants and Benningfield owner's right to a constructive trust. *In re First Capital Mortgage Loan Corporation*, 60 B.R. 915 (Bkrtcy.D.Utah 1986) is a case very similar in its facts to the case presently before this Court. In that case, the plaintiff placed with the debtor certain funds in escrow. The debtor improperly used the funds to repay obligations to the defendant bank. The debtor's trustee recovered the payment from the defendant bank through a preference action and the plaintiff brought an action seeking to impose a constructive trust on the funds so recovered. In dismissing the plaintiff's complaint and entering judgment for the trustee, the court stated:

"Whenever a trust fund has been wrongfully converted by the debtor into another species of property, the bankruptcy court will go as far as it can in tracing and following the trust money step-by-step through its various transmutations. See 5A REMINGTON ON BANKRUPTCY Section 2503, at 327 (5th ed. J. Henderson 1953). But when the trust funds have been entirely depleted by transfer to a bona fide purchaser prior to filing, this Court holds that proceeds received by the trustee in settlement of a preference action against the transferee will be treated as property of the estate not subject to a constructive trust. As an alternative basis for its decision, this Court holds that the strong-arm clause and the policy of creditor equality found in Section 547 and 551 are overriding expressions of federal policy which dictate that a constructive trust not be impressed upon these settlement proceeds." [Footnote omitted].

This Court believes that the decision in *In re First Capital Mortgage Loan Corporation* is a correct result and would merely add to the discussion set forth above, that such a result is consistent with the basic concept of the Bankruptcy Code. A trustee represents unsecured creditors. A preference action under the Bankruptcy Code is intended to increase the assets of the bankruptcy estate. *In re Barry*, 31 B.R. 683 (Bkrtcy.S.D.Ohio 1983). If a mechanic's lien claimant cannot directly recover from a bona fide transferee, he should not be able to indirectly recover by claiming the proceeds of the trustee's successful preference action. To permit him to do so would be to

place him in a superior position to other unsecured creditors who have claims against the bankruptcy estate.

THE COURT, THEREFORE, FINDS:

1. That the mechanic's lien claimants and the Benningfield owner can trace the payments from their source through the Trustee's recovery.

2. That there is a factual issue as to whether the Brimfield Bank was a bona fide transferee. If the Brimfield Bank is a bona fide transferee, then the mechanic's lien claimants and the Benningfield owner may not claim the preference recovery from the Trustee. If the Brimfield Bank is not a bona fide transferee, then the mechanic's lien claimants and the Benningfield owner can recover the preference payment from the Trustee.

IT IS, THEREFORE, ORDERED that this matter proceed on the issue of whether the Brimfield Bank is a bona fide transferee.