**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

APR 23 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | No.    22-35146 |
| Plaintiff-Appellee, | D.C. No. 2:20-cv-00993-RSM |
| v. | |
| QUARTZBURG GOLD LP; IDAHO STATE REGIONAL CENTER LLC, | MEMORANDUM* |
| Defendants-Appellees, | |
| v, | |
| YING LIN; YUN HUANG, | |
| Defendants-Appellants, | |
| and | |
| YUNTIAN DENG; WEIWEI YAN; WEICHENG LI; ZHAO WANG; BIN LIU; DAGANG WANG; DECHUN LI; CHUNJIE LI; HUA ZHANG; JUN JI; JINDONG HU; YU WANG; CHIUNG-MING CHEN; YUE GU; MENGJIE SHI; FEIBING ZHU; JUNG-TING HSIEH, | |
| Defendants. | |

---

       * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted March 28, 2024
Seattle, Washington

Before: WARDLAW, PARKER,** and MILLER, Circuit Judges.

Ying Lin and Yun Huang (the "Huangs") appeal the district court's grant of summary judgment in favor of Quartzburg Gold L.P. and the Idaho State Regional Center L.L.C. (collectively, "Quartzburg") in this interpleader action filed by U.S. Bank National Association ("U.S. Bank"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

The Huangs are Chinese nationals who invested $500,000 in Quartzburg to qualify for permanent residency in the United States under the EB-5 program. The Huangs deposited their funds into an escrow account held by U.S. Bank for disbursement to Quartzburg according to the terms of a Master Escrow Agreement between Quartzburg and U.S. Bank. Pursuant to the Master Escrow Agreement, U.S. Bank agreed to accept and hold investors' funds pending the approval of each investor's visa application. Over 150 investors, including the Huangs, deposited a total of $81 million into U.S. Bank's single, commingled escrow account. Before

---

**     The Honorable Barrington D. Parker, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

any investor's EB-5 application was approved, U.S. Bank erroneously transferred $77.5 million of the $81 million it held to Quartzburg in at least seven transactions between September 2012 and March 2014. Quartzburg then mismanaged and dissipated millions of dollars of investors' funds. The remaining escrowed funds totaled approximately $500,000 and are the subject of this proceeding.

1. Because the escrowed funds were commingled—and not segregated by investor—the district court correctly held that the remaining funds were subject to *pro rata* distribution. The Huangs argue that the remaining funds are directly attributable to their $500,000 deposit. But the Huangs offer no evidence to demonstrate that the funds were segregated by each individual investor so as to be directly attributable to any one investor's deposit. The U.S. Bank records on which the Huangs rely at most show who put money in the account and on whose behalf funds had been disbursed. Because all investors' funds were commingled in the same escrow account, we cannot discern which investor's specific funds were actually disbursed to Quartzburg or left in escrow.[1] *See United States v. 13328 & 13324 State Highway 75 N.*, 89 F.3d 551, 553 (9th Cir. 1996) (concluding that

---

[1] The Huangs also argue that the funds in escrow should be presumed theirs because U.S. Bank had "an independent legal obligation" to protect their deposit and release it to Quartzburg only if their EB-5 application was approved, which it never was. U.S. Bank's improper transfer of $77.5 million of the $81 million held in escrow to Quartzburg rebuts any presumption that U.S. Bank "held sacred the trust fund" and performed their fiduciary duties for the Huangs or any of the other investors. *Scully v. Pac. States Sav. & Loan Co.*, 88 F.2d 384, 387 (9th Cir. 1937).

equity demands that all defrauded customers share equally in the fund of pooled assets where there are multiple victims, numerous transactions, and commingled funds).

The district court properly distinguished *SEC v. Path America, LLC*, No. C15-1350JLR, 2016 WL 1385144 (W.D. Wash. Apr. 6, 2016). In *Path America*, the district court noted that where funds remained segregated in escrow, they were entitled to a refund of their deposits. *Path America, LLC*, 2016 WL 1385144 at *2. Here, unlike in *Path America*, none of the investors' funds were segregated or directly attributable to any individual investor. Instead, the Huangs' funds were commingled with other investors' funds, and therefore, they are not entitled to the funds remaining in escrow. *Id*. (discussing how in the case "the court has effectively drawn 'a bright line' between investors whose entire investment was never commingled with that of other investors, and investors whose investments were commingled in whole or in large part with other investor funds.").

2. Even if the Huangs had submitted adequate evidence to trace the remaining funds in escrow to their deposit, equity would require *pro rata* distribution of the escrowed funds. *See Cunningham v. Brown*, 265 U.S. 1, 12–13 (1924). As soon as the Huangs joined Quartzburg's Master Escrow Agreement and deposited funds into the escrow account, they became Quartzburg investors. Indeed, the Huangs held themselves out as Quartzburg investors to establish

4

eligibility for the EB-5 program. Like other Quartzburg investors, the Huangs were defrauded by Quartzburg when Quartzburg's previous management dissipated investors' funds. We "will not indulge in tracing when doing so would allow one fraud victim to recover all of his losses at the expense of other victims." *United States v. Wilson*, 659 F.3d 947, 956 (9th Cir. 2011).

**AFFIRMED.**